WILL GRAY COSTELLO *et al.*, Plaintiffs-Appellees, v. THE GOVERNING BOARD OF LEE COUNTY SPECIAL EDUCATION ASSOCIATION *et al.*, Defendants-Appellants.

Second District   No. 2—93—0085

Opinion filed November 17, 1993.

James T. Ferrini, Michael R. Grimm, and Paul D. Kerpan, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (Susan Condon, of counsel), and Ole Bly Pace III, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellants.

Stanley Eisenstein, of Katz, Friedman, Schur & Eagle, of Chicago (Martha A. Garcia, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

These consolidated cases seeking declaratory and *mandamus* relief and damages involve questions of first impression regarding the extent of tenure rights provided by the School Code (105 ILCS 5/1—1 *et seq.* (West 1992)) to teachers employed in a special educational program conducted by joint agreement. Three questions have been certified in this interlocutory appeal concerning the plaintiffs' right to immediate employment in the school districts which participate in the special education joint agreement. We will answer the certified questions, as confined by the facts presented in the instant case, and remand the cause to the trial court for further proceedings.

The plaintiffs, Will Gray Costello and Charlene Knudten, were special education teachers employed by the governing board of Lee County special education association (the Association), a defendant. Since Costello and Knudten were employed by the Association on a continuous, full-time basis since 1980, they entered into contractual continued service, or tenure, in the Association. The remaining six defendants are six school districts which established the Association by joint agreement pursuant to section 10—22.31 of the School Code (105 ILCS 5/10—22.31 (West 1992)). The function of the Association is to provide special education services to students in each of the participating districts.

In February 1987, each defendant faced declining student enrollment and financial constraints. Costello was honorably dismissed by the Association pursuant to section 24—12 of the School Code (105 ILCS 5/24—12 (West 1992)) effective at the end of the 1986-87 school year. At the time Costello was dismissed, he did not have sufficient years of tenure or teaching qualifications to "bump" any other teacher employed by the Association. Costello demanded a full-time position in one of the school districts participating in the Association.

However, there were no vacancies. Therefore, Costello accepted a part-time position with the Association approximately one month after the 1987-88 school year began.

In February 1988, both Costello and Knudten were honorably dismissed by the Association effective at the end of the school year. Before the 1988-89 school year began, Costello and Knudten accepted part-time positions with the Association. Costello subsequently accepted full-time employment with a third party and resigned from his position with the Association. Although Knudten commenced the 1988-89 school year with a part-time position, additional responsibilities restored her to full-time employment by December 1, 1988.

On November 29, 1988, Costello filed an amended complaint against the Association and the member districts seeking declaratory and *mandamus* relief and damages resulting from his honorable dismissals in 1987 and 1988. On December 27, 1988, Knudten filed a separate action seeking similar relief. The plaintiffs' complaints alleged that, at the time of their dismissals by the Association, the member districts hired or retained nontenured teachers and teachers possessing shorter periods of tenure in positions for which the plaintiffs were legally qualified. The complaints alleged that sections 24—11 and 24—12 of the School Code (105 ILCS 5/24—11, 24—12 (West 1992)) obligated the districts to offer the plaintiffs full-time positions occupied by nontenured or tenured but less senior teachers.

The defendants moved to dismiss the plaintiffs' complaints for failure to state a cause of action. (735 ILCS 5/2—615(a), 2—619(a)(9) (West 1992).) The Association's motion alleged that the limited tenure rights provided by the School Code to teachers employed in special education programs conducted by joint agreement arise only upon termination of the joint agreement's *entire* array of special education services. (105 ILCS 5/24—11, 24—12 (West 1992).) An affidavit from the Association's executive director was filed in support of the motion to dismiss which stated that the Association and its special education services had not been terminated. The motion further asserted that, if the entire special education program was terminated, the only right provided by the School Code was to an existing vacancy in one of the member districts, provided the plaintiff was qualified to teach the vacant position. (105 ILCS 5/24—11, 24—12 (West 1992).) According to the defendants, the districts were not required to dismiss a teacher to create vacancies the plaintiffs could fill. Alternatively, the Association asserted that it should be dismissed from the case because the plaintiffs were offered part-time teaching positions in the Association sub-

sequent to their dismissals and had been provided the full benefits of tenure.

Likewise, the motions of the member school districts asserted that the plaintiffs failed to state a claim under the School Code. According to the school districts, section 24—11 allows dismissed teachers to fill an existing vacancy in a member district only upon termination of the Association's entire array of special education services. (105 ILCS 5/ 24—11 (West 1992).) Attached to the motions were the affidavits of the superintendents of the member school districts stating that the school districts were reducing their staff and did not have any vacancies.

The circuit court denied the defendants' motions to dismiss in a memorandum opinion and order dated December 7, 1989. According to the trial court, the word "program" in the concluding paragraph of section 24—11 of the School Code referred to the individual joint program or programs operating within the member districts. The court further determined that the School Code granted the plaintiffs tenure in each of the participating districts. On this basis, the trial court determined the plaintiffs were eligible for vacant positions in the participating districts "in the event of termination of the program."

The defendants subsequently filed a motion pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308) to pursue an interlocutory appeal regarding (1) the extent of tenure provided by section 24—11 of the School Code; (2) the meaning of the phrase "termination of the program" contained in section 24—11 of the School Code; and (3) whether the language of the School Code limits the rights of tenured teachers to existing vacancies. The circuit court found there was substantial ground for difference of opinion concerning the construction of sections 24—11 and 24—12 of the School Code and that an immediate appeal from the order denying the defendants' motions to dismiss would materially advance the ultimate termination of the pending litigation. The following three questions of law were certified for review in our court:

"(1) Does the phrase 'in the event of the termination of the program' in section 24—11 of the School Code mean:

(a) complete cessation of all activities of the cooperative;

(b) reduction of service from full to part-time in an area provided by the cooperative (*e.g.* hearing impairment);

(c) reduction in number of teachers providing a particular service;

(d) complete cessation of the particular type of service provided by the cooperative; or

(e) some combination of any of the above alternatives?

(2) If a tenured teacher employed by a special education cooperative prior to July 1, 1987, [sic] is honorably dismissed as a full-time employee due to reduction in force, but is offered part-time employment by the cooperative, does such teacher have an immediate right to full-time employment in a member district, when:

(a) there is a vacancy in a member district for which the teacher is qualified; or

(b) a position for which the cooperative teacher is qualified is occupied by a teacher junior in terms of years of employment to the cooperative teacher?

(3) If a tenured teacher employed by a special education cooperative is honorably dismissed under circumstances giving rise to employment rights in a member district pursuant to section 24—11 of the School Code, but none of the districts has an unfilled teaching position, must a member district terminate a teacher who has comparable qualifications but is junior to the teacher in the cooperative to create a position for the teacher in the cooperative?"

## BACKGROUND

A teacher enters into contractual continued service, or tenure, when that teacher is employed full-time for a probationary period of two consecutive school terms without receiving notice of dismissal. (*Verdeyen v. Board of Education of Batavia Public School District No. 101* (1986), 150 Ill. App. 3d 915, 927.) Section 24—12 of the School Code grants tenured teachers two important rights within their employing districts. First, the employing board must remove or dismiss nontenured teachers before it can dismiss tenured teachers. Between tenured teachers, teachers with the shorter length of tenure in the district must be dismissed first. (105 ILCS 5/24—12 (West 1992).) Exercise of this priority right is known as "bumping." (See *Zink v. Board of Education of Chrisman Community Unit No. 6* (1986), 146 Ill. App. 3d 1016, 1020.) Secondly, if the board has a vacancy for the following school term or within one calendar year of the following school term, the employing board must first offer the position to the dismissed teacher possessing the longest period of tenure, provided the teacher is legally qualified to teach the position. (105 ILCS 5/24—12 (West 1992); see also *Walter v. Board of Education of Quincy School District No. 172* (1982), 93 Ill. 2d 101, 109-10.) The legislature's goal in creating the tenure provisions of the School Code

was to protect teachers of experience and ability through an assurance of continuous employment and rehiring based on merit and not partisan politics. *Birk v. Board of Education of Flora Community Unit School District No. 35* (1984), 104 Ill. 2d 252, 257; *Walter*, 93 Ill. 2d at 111.

The plaintiffs in this case were employed as special education teachers by the governing board of Lee County special education association. The Association was established by joint agreement pursuant to section 10—22.31 of the School Code to provide special education services to students in each of the participating school districts. (105 ILCS 5/10—22.31 (West 1992).) Since the plaintiffs were employed by the Association on a continuous, full-time basis since 1980, they attained the status of tenured employees of the Association. Thus, they were entitled to tenure in the Association and could be recalled to vacant positions in the Association upon dismissal.

In the present case, the plaintiffs seek additional rights. The plaintiffs assert that sections 24—11 and 24—12 of the School Code bestow upon tenured teachers employed by the *Association* the right to "bump" nontenured or less tenured teachers in the member *school districts.* Two prior cases closely resemble the facts in the present case: *Aken v. Board of Control of Lake County Area Vocational Center* (1992), 237 Ill. App. 3d 97, and *Koppi v. Board of Control of Whiteside Area Vocational Center* (1985), 133 Ill. App. 3d 591. In both *Aken* and *Koppi*, the plaintiff teachers were employed in contractual continued service by a cooperative vocational educational program. When these teachers were honorably dismissed due to a reduction in force, they sought employment in the member districts by virtue of their tenure. The courts in both cases held that the detailed tenure rights provided for in section 24—11 of the School Code apply solely to special education teachers. The *Aken* and *Koppi* courts held that the statute does not apply to teachers in other types of joint educational programs, *e.g.*, vocational educational programs. Thus, these cases did not interpret section 24—11 as applied to special education teachers. The issues certified in this interlocutory appeal are of first impression, as no prior cases have determined the extent to which the School Code allows tenured teachers employed by a special educational joint agreement to "bump" teachers in the member school districts when their employment has been decreased or eliminated due to dwindling enrollment or lack of funds.

The statutory authority by which the plaintiffs assert their right to "bump" teachers in the member districts is contained in section 24—11 of the School Code. In Public Act 85—760, the legislature

amended section 24—11. The underlined passages reflect the language which was added by amendment, effective September 23, 1987:

"[Paragraph 5.] The employment of any teacher in a program of a special education joint agreement established under Section 3—15.14, 10—22.31 or 10—22.31a shall be under this and succeeding Sections of this Article. For purposes of attaining and maintaining contractual continued service and computing length of continuing service as referred to in this Section and Section 24—12, employment in a special educational joint program shall be deemed a continuation of all previous certificated employment of such teacher for such joint agreement whether the employer of the teacher was the joint agreement, the regional superintendent, or one of the participating districts in the joint agreement.

[Paragraph 6.] Any teacher employed after July 1, 1987 as a full-time teacher in a program of a special education joint agreement, whether the program is operated by the joint agreement or a member district on behalf of the joint agreement, for a probationary period of two consecutive years shall enter upon contractual continued service in all of the programs conducted by joint agreement which the teacher is legally qualified to hold. In the event of a reduction in the number of programs or positions in the joint agreement, the teacher on contractual continued service shall be eligible for employment in the joint agreement programs for which the teacher is legally qualified in order of greater length of continuing service in the joint agreement unless an alternative method of determining the sequence of dismissal is established in a collective bargaining agreement. In the event of the dissolution of a joint agreement, the teacher on contractual continued service who is legally qualified shall be assigned to any comparable position in a member district currently held by a teacher who has not entered upon contractual continued service or held by a teacher who has entered upon contractual continued service with shorter length of contractual continued service.

\*\*\*

[Paragraph 8.] For purposes of this and succeeding Sections of this Article, a program of a special educational joint agreement shall be defined as instructional, consultative, supervisory, administrative, diagnostic, and related services which are managed by the special educational joint agree-

ment designed to service two or more districts which are members of the joint agreement.
***

[Paragraph 10.] The employment of any teacher in a special education program authorized by Section 14—1.01 through 14—14.01, or a joint educational program established under Section 10—22.31a, shall be under this and the succeeding Sections of this Article, and such employment shall be deemed a continuation of the previous employment of such teacher in any of the participating districts, regardless of the participation of other districts in the program. Any teacher employed as a full-time teacher in a special education program *prior to September 23, 1987* in which 2 or more school districts participate for a probationary period of 2 consecutive years shall enter upon contractual continued service in each of the participating districts, subject to this and the succeeding Sections of this Article, and in the event of the termination of the program shall be eligible for any vacant position in any of such districts for which *such teacher* is qualified." (Emphasis added.) See Pub. Act 85—760, eff. September 23, 1987; Pub. Act 85—1209, eff. August 12, 1988; Pub. Act 85—1163, eff. January 1, 1989 (now codified, as amended, at 105 ILCS 5/24—11 (West 1992)).

As amended, section 24—11 clearly distinguishes between the rights of teachers employed prior to September 23, 1987, the effective date of the amendatory act, and those employed after July 1, 1987. We note that these date restrictions leave a gap. A teacher could theoretically be employed both after July 1, 1987, and prior to September 23, 1987. We will assume for purposes of this appeal that the legislature intended the restrictions to apply to the date the teacher was first employed in a special educational program conducted by joint agreement. Since the plaintiffs in this case were first employed by the Association in 1980, this appeal concerns the final paragraph of section 24—11, which describes the rights of teachers employed prior to September 23, 1987. Therefore, the patent ambiguity concerning the gap is immaterial to the facts presented in the instant case.

For purposes of computing length of tenure, also referred to as seniority, in the joint agreement, paragraph 5 of section 24—11 allows all teachers employed in "a program of a special education joint agreement established under Section 3—15.14 [cooperative educational programs], 10—22.31 [special education] or 10—22.31a [joint educational programs]" to add prior years of service in any program conducted by the joint agreement. (105 ILCS 5/24—11 (West 1992)

(paragraph 5 of section 24—11).) Further, for purposes of computing length of tenure, any teacher employed "in a special education program authorized by Section 14—1.01 through 14—14.01 [applicable to handicapped children], or a joint educational program established under Section 10—22.31a [joint educational programs]" may add prior years of employment in any of the "participating districts, regardless of the participation of other districts in the program." (105 ILCS 5/ 24—11 (West 1992) (paragraph 10 of section 24—11).) By allowing joint program teachers to add prior years of service in a participating school district for purposes of computing length of tenure, a teacher who transfers from a school district to a special education program conducted by joint agreement would not lose accrued tenure. Likewise, a teacher employed in a special educational joint program who switches from one program to another would not lose tenure accrued in the joint agreement.

Paragraph 6 of section 24—11 expressly delineates the effect of these rights as applied to teachers employed after July 1, 1987. Teachers employed after July 1, 1987, who have achieved tenure in the joint agreement are treated as possessing tenure in all of the *programs* offered by the joint agreement for which that teacher is legally qualified. When the number of programs conducted by the joint agreement is reduced, eligibility for employment within the joint agreement is determined by length of tenure. Tenured teachers first employed by a special educational joint agreement after July 1, 1987, are only allowed to "bump" teachers in the member school districts when the joint agreement is dissolved.

Under section 24—11, teachers employed "in a special education program prior to September 23, 1987," the effective date of the amendatory act, have different rights. Unlike teachers first employed after July 1, 1987, teachers employed full-time in a special education program prior to September 23, 1987, in which two or more school districts participate for a probationary period of two consecutive years, have tenure in each of the member school districts. The courts in *Aken* and *Koppi* referred to this statutory right as "super-tenure" (*Aken*, 237 Ill. App. 3d at 100; *Koppi*, 133 Ill. App. 3d at 593) and found that it applied solely to special education teachers. It is noteworthy that the legislature did not eliminate these super-tenure rights when it amended section 24—11 in 1987. Rather, it imposed a date restriction, or grandfather clause, and allowed teachers employed in a special education program prior to September 23, 1987, to maintain the right of super-tenure, or tenure in each of the participating school districts.

Contrary to the provisions applicable to teachers first employed after July 1, 1987, section 24—11 fails to expressly delineate the effect of the statutory rights of the teachers employed in special education programs prior to September 23, 1987. The italicized language below describes the tenure rights of teachers employed prior to September 23, 1987, in probationary special education programs conducted for two consecutive years:

> "Any teacher employed as a full-time teacher in a special education program prior to September 23, 1987 in which 2 or more school districts participate for a probationary period of 2 consecutive years shall enter upon contractual continued service in each of the participating districts, subject to this and the succeeding Sections of this Article, and *in the event of the termination of the program shall be eligible for any vacant position in any of such districts for which such teacher is qualified."* (105 ILCS 5/24—11 (West 1992) (paragraph 10 of section 24—11).)

The plaintiffs in the present case contend that the italicized language, coupled with the right of super-tenure, entitles them to "bump" teachers in the school districts when their positions as special education teachers in the joint agreement are reduced from full-time to part-time status. In this interlocutory appeal, we must define extent of tenure rights provided by section 24—11 of the School Code to teachers employed full-time "in a special education program prior to September 23, 1987."

## CERTIFIED QUESTION No. 1

The first certified question requires this court to interpret the phrase "termination of the program" as it appears in the final paragraph of section 24—11. The defendants assert that the phrase "termination of the program" is unambiguous and must be interpreted by the literal, dictionary, and statutory definitions. According to the defendants, "termination" is defined as "[e]nd in time or existence; close; cessation; conclusion." (Black's Law Dictionary 1319 (5th ed. 1979).) Therefore, the defendants urge this court to construe the phrase as requiring cessation of the *entire* special education program conducted by joint agreement, and not reduction in force, or the cutback of a fractional portion of the joint program, as plaintiffs contend. Since the Association continues to provide special education services, the defendants assert that the plaintiffs are not entitled to fill any vacant positions in the school districts.

Resolution of this question is a matter of statutory interpretation. In construing the meaning of a statute, the primary rule is to determine and give effect to the intent of the legislature. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 441; *Swanson v. Board of Education of Foreman Community Unit School District No. 124* (1985), 135 Ill. App. 3d 466, 470.) The basic intent of the legislature can be ascertained by examining the terminology of the statute, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the statute as a whole. (*Maske v. Kane County Officers Electoral Board* (1992), 234 Ill. App. 3d 508, 512.) If the language of a statute is certain and unambiguous, the court must enforce the law as enacted without resorting to other aids of construction. (*People v. Drakeford* (1990), 139 Ill. 2d 206, 214; *Verdeyen,* 150 Ill. App. 3d at 922.) If the language is capable of being understood by reasonably well-informed persons in two or more different senses, an ambiguity exists, and it is proper to examine sources other than the statute's language to ascertain the legislative intent. *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 51; *Hyatt Corp. v. Sweet* (1992), 230 Ill. App. 3d 423, 429.

While the defendants' interpretation is reasonable, the plaintiffs' construction of the phrase "termination of the program" as a reduction in staff or elimination of a portion of the special education program is also a reasonable interpretation of the dictionary and statutory definitions. Since the different interpretations proffered by the parties are both reasonable, the phrase is ambiguous, and we must delve into other principles of statutory construction to determine the true intent of the legislature.

It is presumed that statutes which relate to the same subject are governed by one spirit and a single policy. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 17.) A conflict in the interpretation of a single statute can be resolved by referring to the purposes and goals of the statute as a whole. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 208.) Thus, in determining legislative intent, courts should consider the entire statutory scheme in *pari materia* in a fashion which renders the statute consistent, useful, and logical. *Schaumburg State Bank v. Bank of Wheaton* (1990), 197 Ill. App. 3d 713, 720.

The 1987 amendments to section 24—11 provide the following definition of "program":

> "For purposes of this and succeeding Sections of this Article, a program of special educational joint agreement shall be de-

fined as instructional, consultative, supervisory, administrative, diagnostic, and related services which are managed by the special educational joint agreement designed to service two or more districts which are members of the joint agreement." (See Pub. Act 85—760 §2, eff. September 23, 1987 (amending Ill. Rev. Stat. 1985, ch. 122, par. 24—11 (now codified, as amended, at 105 ILCS 5/24—11 (West 1992) (paragraph 8 of section 24—11))).)

A reading of the full text of section 24—11, including the amendments, reveals that the legislature differentiates between "programs in the joint agreement" and the "joint agreement" itself, and also between a "reduction in the number of programs or positions in the joint agreement," "dissolution of a joint agreement," and "termination of the program." When the legislature uses certain words in one instance and different words in another, different results were intended. (*Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1105-06.) Thus, these terms cannot be interpreted as equivalents.

The final paragraph of section 24—11 of the School Code, which we are asked to construe, provides as follows:

"Any teacher employed as a full-time teacher *in a special education program* prior to September 23, 1987 *in which 2 or more school districts participate for a probationary period of 2 consecutive years* shall enter upon contractual continued service in each of the participating districts, subject to this and the succeeding Sections of this Article, and in the event of the *termination of the program* shall be eligible for any vacant position in any of such districts for which such teacher is qualified." (105 ILCS 5/24—11 (West 1992) (paragraph 10 of section 24—11).)

The statute first refers to teachers first employed prior to September 23, 1987 "in a special education program *** in which 2 or more school districts participate for a probationary period of two consecutive years." These teachers are eligible for a vacant position in any of the participating school districts "in the event of the termination of the program." The "program" in the final clause is modified by the "special education program" referred to in the first clause, in which two or more school districts participate for a probationary period of two consecutive years.

If the phrase "termination of the program" was interpreted to require cessation of the entire array of services provided by the special education joint agreement, as the defendants urge, the legislature

would have referred to this event as "dissolution of the joint agreement" as it did in the 1987 amendments. A construction which will render a statute absurd or self-contradictory will be avoided. Conditioning tenure rights on termination of the entire special education programs provided by the joint agreement would render superfluous the provisions of the School Code conveying "super-tenure." The legislature granted "super-tenure" rights to teachers in special education joint programs to encourage experienced teachers to participate in the program. However, the defendants' interpretation of section 24—11 fails to offer experienced teachers hired prior to September 27, 1987, virtually any inducement to join special education joint programs. Interpreting section 24—11 in the manner suggested by the defendants would not advance the clear and apparent purposes of the amendments to the School Code, *i.e.*, to improve school systems by inducing experienced teachers to join special education programs conducted by joint agreement through a promise of continuing service. (See *Betebenner v. Board of Education of West Salem Community High School District No. 201* (1949), 336 Ill. App. 448.) The defendants' interpretation of section 24—11 would lead to the absurd result that all but one teacher hired prior to September 23, 1987, could be eliminated without recourse.

■ Contrary to the defendants' assertion, "termination of the program" does not refer to the full elimination of the entire array of services provided by the joint agreement. Rather, the phrase refers to the full elimination of one instructional, consultative, supervisory, administrative, diagnostic or related service, on a two-year probationary status, managed by the Association by virtue of the joint agreement. Various special education "programs" provided by the Association by virtue of the joint agreement comprise the entire array of services provided. Such "programs" include different types of instruction for "Children with Specific Learning Disabilities." (105 ILCS 5/14—1.03a (West 1992).) In this case, Costello taught hearing impaired classes. This is an example of one type of "program" conducted by the joint agreement referred to in section 24—11.

In response to the first certified question, the phrase "termination of the program" refers to the complete cessation of one individual type of probationary program or service provided by the Association. Therefore, when a tenured teacher employed prior to September 23, 1987, is honorably dismissed because a program on a probationary two-year status provided by the Association *is completely eliminated*, the teacher is eligible to fill any *vacant* position in any of the member

districts according to his or her tenure in the joint program and the particular member district.

In this case, the record fails to indicate whether the specific programs either of the plaintiffs instructed were completely terminated or eliminated or whether that specific program was on a probationary status. Assuming *arguendo* the plaintiffs were dismissed because their specific programs were terminated and the program was on probationary status, section 24—11 allows them to fill a vacancy in any of the member districts which they are qualified to teach.

### CERTIFIED QUESTION No. 2

The second certified question inquires whether a full-time teacher employed in a special education program prior to September 23, 1987, may "bump" a teacher in one of the member districts when he or she is honorably dismissed from the Association but is subsequently offered a part-time position in the cooperative. If we assume the "programs" in which plaintiffs taught were ongoing, and not on a probationary status, and that the plaintiffs' statuses were reduced from full-time to part-time, question No. 2 asks whether the plaintiffs would be entitled to "bump" nontenured or less-tenured teachers in the member districts.

With the amendment of section 24—11 in 1987, the legislature included language addressing this precise situation. When teachers employed after July 1, 1987, experience a reduction in the scope of their employment, without the termination of a probationary program or the special educational joint agreement, they have no rights in the member districts. The only right provided to these teachers by section 24—11 is to fill positions in the joint agreement in the order of seniority.

The amendments to section 24—11 limit the right of "super-tenure" to full-time teachers employed in a probationary special education program prior to September 23, 1987. Similarly, section 14—9.01 of the School Code, which describes the qualifications of teachers of handicapped children, specifies that any teacher employed in a special education program prior to September 23, 1987, in which two or more districts participate, shall enter upon contractual continued service in each of the participating districts. (105 ILCS 5/14—9.01 (West 1992).) It is noteworthy that the legislature did not extend this right to teachers hired after July 1, 1987.

Furthermore, contrary to the provisions of section 24—11 applicable to teachers hired after July 1, 1987, the statute provides no limitation on tenure rights of teachers employed prior to September 23,

1987, except with regard to probationary special education programs. The right to a vacancy arises only in the event a probationary special education program is completely eliminated. This is the *sole* limitation on the tenure rights of teachers hired prior to September 23, 1987. All of the regular benefits of tenure, including those provided by section 24—12, as well as the statutory grant of super-tenure, remain intact.

The effect of the amendments to section 24—11 were described in the transcription debates as follows:

> "Senate Bill 696 provides that teachers employed in a special education joint agreement program shall no longer be able to enter upon tenure in each of the participating school districts [super-tenure]. Currently if you have a joint agreement with other school districts, those teachers in that joint agreement can bump teachers with less seniorities if there is a problem in the [joint agreement] itself. This would take away that authority except within the joint agreement itself ***." 85th Ill. Gen. Assem., House Proceedings, June 12, 1987, at 21-22 (statements of Representative Hicks).

The historic maxim of construction, *inclusio unius est exclusio alterius*, or the inclusion of one is the exclusion of the other, is applicable. (See *Foster v. Devilbiss Co.* (1988), 174 Ill. App. 3d 359, 367; *Browning-Ferris Industries, Inc. v. Pollution Control Board* (1984), 127 Ill. App. 3d 509, 511; *2416 Corp. v. Chicago Transit Authority* (1975), 26 Ill. App. 3d 468, 473.) When the School Code was amended, the legislature differentiated the rights of teachers first employed after July 1, 1987, and those first employed prior to September 23, 1987. The legislature purposefully limited the right of super-tenure to teachers first employed prior to September 23, 1987. Contrary to the provisions applicable to teachers first employed after July 1, 1987, the legislature imposed no limitation on the regular benefits of tenure provided by section 24—12, which include "bumping" and "rehiring" rights, aside from the "vacancy provisions" which arise in the event a probationary special education program is terminated. If the amendments were an attempt to eliminate these rights, the legislature would have made the terms explicit.

Courts will avoid the construction of a statute which would render any part of it meaningless or void. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362-63.) If the super-tenure rights specifically provided for in sections 24—11 and 14—9.01, and the regular tenure rights provided by section 24—12, have any application, tenured teachers employed in a special education program prior to Sep-

tember 23, 1987, are allowed to "bump" nontenured or less-tenured teachers in the member school districts. As stated by our supreme court in *Birk v. Board of Education of Flora Community Unit School District No. 35* (1984), 104 Ill. 2d 252, 257, "a tenured teacher is entitled to a reading of section 24–12 which is consistent with its prime purpose of protecting those who have qualified for its protections." It follows that the teachers employed prior to September 23, 1987, are entitled to a reading of section 24–11 consistent with the protections conveyed prior to 1987 which were not explicitly eliminated by amendment, including the regular benefits of tenure provided by section 24–12.

As we indicated earlier in our opinion, section 24–12, which describes the procedure for removing or dismissing tenured teachers, provides that the employing board "remove or dismiss" nontenured teachers before tenured teachers. Between tenured teachers, the board must "remove or dismiss" the teacher with the shorter length of tenure, or seniority. (105 ILCS 5/24–12 (West 1992).) In *Caviness v. Board of Education of Ludlow Community Consolidated School District No. 142* (1978), 59 Ill. App. 3d 28, the plaintiff, a tenured full-time teacher, was reassigned to part-time duties. At the time of the reassignment, there were nontenured teachers in full-time positions for which the plaintiff was qualified. However, the board refused to place the plaintiff in one of those positions, on the basis that the plaintiff's reassignment did not constitute a "removal" or "dismissal" within the purview of section 24–12 of the School Code. The *Caviness* court disagreed, holding that the words "removed" or "dismissed" were broad enough to encompass *any* reduction in the extent of employment. The court reasoned:

> "[L]imiting the application of 'removed' or 'dismissed' to instances of complete termination would—as a practical matter—totally obliterate the protections intended by the statute. If this were the case, a board could merely nibble away and reduce one's employment until economic necessity forced the tenured teacher to resign." (*Caviness*, 59 Ill. App. 3d at 31.)

Thus, the *Caviness* court found that the reduction to a part-time teaching position activated the "bumping" privileges of tenured teachers provided by section 24–12. "To hold otherwise would simply emasculate the statutory tenure protections and circumvent the clear legislative intent sheltered under the canopy of the School Code." *Caviness*, 59 Ill. App. 3d at 31.

In *Birk v. Board of Education* (104 Ill. 2d at 257-58), our supreme court adopted *Caviness* and went so far as to hold that the teacher's

reduction in service from a 10-month contract to a standard nine-month contract constituted a "removal" or "dismissal" under section 24—12 which triggered the "bumping" privileges associated with a tenured position. The court would not accept the board's comparison of the 10-month contract to extracurricular duties, which can be eliminated without recourse. *Birk*, 104 Ill. 2d at 258-59; *Caviness*, 59 Ill. App. 3d at 31 n.1.

In this case, the positions in the Association held by both of the plaintiffs were reduced from full-time to part-time status. We adopt the analysis of the *Caviness* court and determine that this reduction amounts to a "removal" or "dismissal" sufficient to trigger the "bumping" rights provided by section 24—12. The defendants argue that the plaintiffs are not entitled to these benefits, because they agreed to accept part-time teaching positions with the Association. We attribute no merit to the defendants' contention.

In *Deem v. Board of Education of Triad Community Unit School District No. 2* (1990), 200 Ill. App. 3d 903, a full-time tenured teacher agreed to accept a part-time position with the employing board. The teacher inquired about placement in a full-time position but was informed that no such positions were available. When a newly created, full-time position, for which the plaintiff teacher was qualified, was offered to a less senior teacher, the plaintiff asserted his section 24—12 "bumping" rights associated with tenure. The Board argued that the teacher's voluntary acceptance of the part-time position did not constitute a "removal" or "dismissal" sufficient to activate his "bumping" rights, since he agreed to the reduction. On appeal, the court extrapolated from *Caviness* and related case law that the mutually agreed upon reduction amounted to a "removal" or "dismissal." The *Deem* court reasoned:

> "Were we to hold otherwise, a tenured teacher who accepted part-time employment could never resume full-time teaching without a school board's approval. Thus, a tenured teacher, who had agreed to accept part-time status, always could be required to remain part time even though there might be non-tenured and less tenured teachers in positions which the tenured part-time teacher is qualified to teach. Such a holding would authorize a board to refuse to fill vacancies with a tenured part-time teacher who is qualified to fill the vacancy, a one-sided result not in the spirit of the tenure provisions of the School Code." *Deem*, 200 Ill. App. 3d at 905-06.

The *Deem* court further held that the teacher's right to be recalled to a vacant position was not thwarted through the passage of

time. Section 24—12 provides that a "removed" or "dismissed" teacher has preferential rehiring rights to any vacancies for which the teacher is qualified arising "the following school term or within one calendar year from the beginning of the following school term." (105 ILCS 5/24—12 (West 1992).) When teaching vacancies arise after this time frame, a removed or dismissed tenured teacher no longer enjoys preferential rehiring rights. (*Deem*, 200 Ill. App. 3d at 906.) In *Deem*, the teacher was reduced to part-time employment for the 1979-80 school term. The Board asserted that the teacher's request to be re-hired during the 1984-85 school terms and thereafter was a nullity, since his recall rights no longer existed. On appeal, the *Deem* court responded that such a restrictive reading of section 24—12 would thwart the purposes of the School Code's tenure provisions. The Board was on notice that Deem desired to resume full-time teaching, and he made such a demand within the applicable time frames. Thus, the teacher in *Deem* was allowed to assert his bumping rights against the teacher who occupied the newly created position. The *Deem* court clarified, however, that it "intimate[d] no opinion as to whether a teacher who voluntarily accepts a part-time position may thereafter exercise bumping rights against a less senior teacher who was employed by a Board, and likewise tenured, at the time of the voluntary reduction." *Deem*, 200 Ill. App. 3d at 907.

■ Applying *Deem* to the facts of the instant case, the plaintiffs have not been provided the full benefits of their status as tenured teachers by accepting part-time employment. The record is clear that both plaintiffs demanded full-time positions in the Association at the time of their reductions. However, the plaintiffs did not possess sufficient seniority or teaching qualifications to bump another teacher employed by the Association. The record further reflects that the plaintiffs demanded full-time positions in the member districts, but were informed that no vacant positions were available.

The economics of a teacher's situation and the inability to locate a full-time position elsewhere might require the teacher to accept a part-time position when offered. We will not apply the tenure provisions of the School Code in a fashion which punishes rather than favors the teacher's experience and continual service. The construction the defendants urge us to apply contradicts the intent and essence of the tenure provisions.

In *Deem*, the position the teacher sought to fill by virtue of his tenured status was newly created. In this case, however, the plaintiffs seek to occupy positions in the member districts currently held by nontenured or less-senior teachers. Although *Deem* chose not to ad-

dress the propriety of this situation, the fact that the plaintiffs accepted part-time positions in the Association in no way lessens their right to bump nontenured or tenured but less senior teachers employed by the member districts. We further caution that the plaintiffs' rights are in no way cut off through the passage of time in filing the instant suit. *Deem*, 200 Ill. App. 3d at 906-07.

CERTIFIED QUESTION No. 3

The final question has been presented as follows:

"If a tenured teacher employed by a special education cooperative is honorably dismissed under circumstances giving rise to employment rights in a member district pursuant to section 24—11 of the School Code, but none of the districts has an unfilled teaching position, must a member district terminate a teacher who has comparable qualifications but is junior to the teacher in the cooperative to create a position for the teacher in the cooperative."

This question is redundant of the first two questions, because it essentially inquires whether tenured teachers employed in a special education program conducted by joint agreement prior to September 23, 1987, are entitled to "bump" nontenured or less-tenured teachers in the member districts.

In our response to certified question No. 1, we established that teachers employed in special education programs conducted by joint agreement prior to September 23, 1987, are allowed to fill a vacant position in any of the member districts in the order of seniority when a particular probationary program or service has been completely eliminated. We established in our response to certified question No. 2 that the plaintiffs are entitled to assert their statutory right of tenure provided by section 24—12, which includes the right to bump nontenured or tenured but less senior teachers in the member districts. In no way is this right clouded by the existence of vacant positions in the member school districts.

However, the case law is clear that the statutory preference for tenured teachers over nontenured or tenured but less senior teachers does not require the school district to recombine and realign courses to create a position for the "removed" or "dismissed" teacher by recombining courses from other teaching positions. In *Peters v. Board of Education of Rantoul Township High School District No. 193* (1983), 97 Ill. 2d 166, a tenured high school English teacher was honorably dismissed because of a discontinuance of the "particular type of teaching service" in which the plaintiff was engaged. The plaintiff

sought reinstatement as a full-time teacher by asserting that the statutory tenure provisions required the board to recombine classes currently held by nontenured teachers in order to create a teaching position for which she was legally qualified. The *Peters* court held that "a tenured teacher who has been dismissed because of a discontinuance of teaching positions has no right to reassignment to a position held by nontenured teachers for which the tenured teacher is not qualified. A tenured teacher must satisfy all of the minimal academic qualifications prescribed by statute for a given teaching position before the tenured teacher can invoke the statutory right to 'bump' or displace a tenured teacher." (*Peters*, 97 Ill. 2d at 171.) As aptly stated in *Higgins v. Board of Education of Community Unit School District No. 303* (1981), 101 Ill. App. 3d 1003, 1008, "to hold that a tenured teacher may draw a single class or two from teaching positions he is otherwise unqualified to teach and then assert rights of tenure as to that part-time position of his own creation would exceed the protections offered by statute." See also *Catron v. Board of Education of Kansas Community Unit School District No. 3* (1984), 126 Ill. App. 3d 693.

The statutory term "position" refers to the totality of the job to which the tenured teacher lays claim, and not to a part of it. (*Hayes v. Board of Education of Auburn Community Unit School District* (1981), 103 Ill. App. 3d 498, 501.) A teacher may not recombine or realign courses to "create" a position for which he or she is qualified to teach that did not previously exist. A tenured teacher may only seek to bump a nontenured or less senior teacher if the tenured teacher is qualified to teach the entire "position." The court in *Catron v. Board of Education of Kansas Community Unit School District No. 3* (1984), 126 Ill. App. 3d 693, summarized the case law in this area as follows:

> "Incidental reassignment [by the board] of single courses to established teaching positions to maximize the use of staff and accommodate changes in enrollment, curriculum, and economy may be permissible—although as a result a tenured teacher is dismissed or prohibited from returning from leave—as long as the tenured teacher is (1) not qualified to teach the courses comprising the 'position' of less senior teachers, and (2) teaching assignments are not aligned in bad faith to avoid the existence of a 'position' which could be filled by a tenured teacher for whom dismissal was sought." *Catron*, 126 Ill. App. 3d at 697.

Therefore, the plaintiffs in the present case may only bump in the member districts if the plaintiff is legally qualified for an entire position currently held by a nontenured or tenured but less senior teacher. In response to the certified question No. 3, the member school districts are not obligated to realign courses to "create" a vacancy the plaintiffs are qualified to fill by recombining and realigning courses from several positions.

In conformance with the opinion of this court, we remand this cause to the circuit court of Lee County for further proceedings.

Remanded.

WOODWARD and BOWMAN, JJ., concur.