# Illinois Official Reports

## Appellate Court

---

**Royal Glen Condominium Ass'n v. S.T. Neswold & Associates, Inc.,**
**2014 IL App (2d) 131311**

---

| | |
|---|---|
| Appellate Court Caption | ROYAL GLEN CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. S.T. NESWOLD AND ASSOCIATES, INC., Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-1311 |
| Filed | September 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court, in response to a question certified by the trial court pursuant to Supreme Court Rule 308, stated that section 12 of the Condominium Property Act does not create a duty on the part of an insurance producer giving rise to a statutory cause of action against such an insurance producer that issues, delivers or renews an insurance policy to a condominium association that provides insurance coverage in a total amount less than the full insurable replacement cost of the insured property, less deductibles, but including coverage for the increased costs of construction due to building code requirements, at the time the insurance was purchased and at each renewal date. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-L-818; the Hon. Patrick J. Leston, Judge, presiding. |
| Judgment | Certified questions answered; cause remanded. |

Counsel on
Appeal

Brian C. Rocca, Michael A. Barry, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

Nicholas R. Mitchell, of Kovitz Shifrin Nesbit, P.C., of Buffalo Grove, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 This interlocutory appeal presents three certified questions regarding a suit by plaintiff, the Royal Glen Condominium Association, against defendant, S.T. Neswold & Associates, Inc., pursuant to section 12 of the Condominium Property Act (Condo Act) (765 ILCS 605/12 (West 2010)). We answer the first certified question in the negative. Specifically, we find that section 12 does not impose on an insurance producer a duty giving rise to a statutory cause of action against that insurance producer. Our answer to the first certified question is dispositive of the remaining two certified questions.

¶ 2 I. BACKGROUND

¶ 3 The following facts are alleged in the pleadings. The Royal Glen Condominiums are comprised of two separate buildings located in the Village of Glen Ellyn, Illinois (Village). The buildings were constructed around 1978 and did not include sprinkler systems, as they were not required by the Village at the time. Effective as of March 1, 2004, the Village code required installation of NFPA-approved sprinkler systems to remodeled areas only.

¶ 4 Defendant has served as the insurance broker for plaintiff since approximately 1999. On June 11, 2009, based on defendant's recommendation, plaintiff purchased from Travelers a "Condominium Pac Plus" insurance policy, which includes coverage for the complete replacement cost of the insured buildings. Plaintiff also purchased an "Ordinance or Law Coverage" endorsement, with a $1 million limit. Defendant served as the insurance producer for this policy.[1]

¶ 5 On October 20, 2009, a fire destroyed substantial portions of one of the condominium buildings. The Village determined that its restoration must include installation of a sprinkler system, as required by the code.

---

[1]An "insurance producer" is defined in the Illinois Insurance Code as "a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2010).

¶ 6 Plaintiff undertook a bidding process for the renovation, including the sprinkler system, the total cost of which was estimated to be $1.3 million. Plaintiff advised defendant of the fire and sought coverage under the insurance policy for the cost of the renovation.

¶ 7 Travelers accepted coverage of the renovation cost but only for a total of $1 million, citing the $1 million limit in the endorsement as the basis for denying full coverage.

¶ 8 Based on the $1.3 million estimated cost of the renovation, plaintiff alleges that it was left $300,000 short of the necessary funds. Plaintiff alleges that, at the time of purchase, it did not know that the policy, when coupled with the endorsement, would not serve to provide the "full insurable replacement cost of the insured property, less deductibles, but including coverage for the increased costs of construction due to building code requirements, at the time the insurance [was] purchased and at each renewal date," as required by section 12(a)(1) of the Condo Act. 765 ILCS 605/12(a)(1) (West 2010).

¶ 9 Plaintiff alleges that, even though the Village code required installation of sprinkler systems to remodeled areas as of March 1, 2004, well before it purchased the insurance policy, the full insurable replacement cost of the insured property, including the increased costs of construction based on the code as it existed when plaintiff purchased the policy, exceeded the coverage by $300,000.

¶ 10 Plaintiff sued defendant. Count I of the complaint alleged failure to procure sufficient insurance coverage for the "full insurable replacement cost of the insured property *** including coverage for the increased costs of construction due to building code requirements," as mandated by section 12(a)(1). Count II alleged that, pursuant to section 2-2201(a) of the Insurance Placement Liability Act (Insurance Placement Act) (735 ILCS 5/2-2201(a) (West 2010)), defendant failed to exercise ordinary care and skill in procuring a Condo Act-compliant insurance policy and in assessing the sufficiency of the policy it provided, which, when coupled with the endorsement, failed to satisfy the requirements of section 12(a)(1) of the Condo Act.

¶ 11 Defendant filed a combined motion to dismiss both counts of the complaint, pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)), contending that section 12 does not create a statutory cause of action against an insurance producer or a duty of care pursuant to the Insurance Placement Act. Defendant's motion, and its subsequent motion to reconsider, were denied.

¶ 12 Defendant brought a second motion to dismiss on an independent basis–that, even if there is a valid cause of action pursuant to section 12, Travelers, which issued the policy, and the Director of Insurance, who in his official capacity approved the endorsement, were necessary parties to the action. The trial court denied this motion as well.

¶ 13 Defendant ultimately brought this interlocutory appeal, pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010), after the trial court certified the following three questions: (1) Does section 12 of the Condo Act "create a duty on the part of an insurance producer giving rise to a statutory cause of action against such an insurance producer"? (2) Does section 12 "create a legal duty for an insurance producer to procure a policy of insurance that includes coverage for the increased costs of construction due to building code requirements at the time the insurance is purchased and at each renewal date"? and (3) If a cause of action exists under section 12 against an insurance producer, are the insurer and the Director of Insurance necessary parties?

## II. ANALYSIS

Plaintiff asserts that its right to sue defendant is created by section 12(a)(1) of the Condo Act, which provides:

> "§ 12. Insurance.
>
> (a) Required coverage. No policy of insurance shall be *issued or delivered* to a condominium association, and no policy of insurance issued to a condominium association shall be *renewed*, unless the insurance coverage under the policy includes the following:
>
> > (1) Property insurance. Property insurance (i) on the common elements and the units, including the limited common elements and except as otherwise determined by the board of managers, the bare walls, floors, and ceilings of the unit, (ii) providing coverage for special form causes of loss, and (iii) in a total amount of not less than the *full insurable replacement cost of the insured property*, less deductibles, *but including coverage for the increased costs of construction due to building code requirements, at the time the insurance is purchased and at each renewal date*." (Emphases added.) 765 ILCS 605/12(a)(1) (West 2010).

Plaintiff does not dispute that section 12 places a duty upon a board of managers to acquire insurance. It maintains that the phrase, "[n]o policy of insurance shall be *issued* or *delivered* to a condominium association, and no policy of insurance issued to a condominium association shall be *renewed*, unless the insurance coverage under the policy includes *** a total amount of not less than the full insurable replacement cost of the insured property," is not limited to the board of managers, because, although a board can renew an insurance policy, the board cannot issue or deliver a policy, as an insurance producer can. Plaintiff thus concludes that section 12(a)(1) imposes a duty on an insurance producer to procure a policy that includes the increased costs of construction due to building code requirements existing when the policy is purchased and at each renewal date, while a board of managers has the duty to renew the policy.

Defendant contends that section 12(a) does not impose such a duty upon an insurance producer. Defendant argues that the phrase "[n]o policy of insurance shall be issued or delivered" does not explicitly provide that it applies to insurance producers; rather, the statute as a whole speaks directly to the duties of boards of managers, not insurance producers, and any expansion of the duties contained within section 12 would run contrary to the principles of statutory construction.

The first certified question requires this court to interpret the phrase, "[n]o policy of insurance shall be issued or delivered to a condominium board," to determine whether it imposes on an insurance producer a duty giving rise to a statutory cause of action against that insurance producer. Resolution of this issue is a matter of statutory interpretation.

In construing a statute, the primary rule is to determine and give effect to the intent of the legislature. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). The intent of the legislature can be ascertained by examining the terminology of the statute, its goals and purposes, the natural import of the words in common and accepted usage, the setting in which they are employed, and the general structure of the statute as a whole. *Costello v. Governing Board of*

*Lee County Special Education Ass'n*, 252 Ill. App. 3d 547, 557 (1993). If the language of a statute is certain and unambiguous, the court must enforce the law as enacted without resorting to other aids of construction. *Id*. If the language is capable of being understood by reasonably well-informed persons in two or more different senses, an ambiguity exists, and it is proper to examine sources other than the statute's language to ascertain the legislative intent. *Id*. One such source is the legislative history. *Kunkel v. Walton*, 179 Ill. 2d 519, 533-34 (1997).

¶ 20    Defendant maintains that the first sentence of section 12(a) is ambiguous as it does not provide who is directed to issue or deliver a policy. We agree. Section 12(a) is written in the passive voice, the subject of which is "policy." There is no explicit reference to who or what shall issue or deliver the policy. In fact, there is also no reference to who has the duty to renew the policy.

¶ 21    Thus, we must delve into other principles of statutory construction to determine the legislature's intent. It is presumed that statutes that relate to the same subject are governed by one spirit and a single policy. *Picerno v. 1400 Museum Park Condominium Ass'n*, 2011 IL App (1st) 103505, ¶ 13. A conflict in the interpretation of a single provision can be resolved by referring to the purposes and goals of the statute as a whole. *Costello*, 252 Ill. App. 3d at 557. Therefore, in determining legislative intent, courts should consider the entire statutory scheme *in pari materia* in a manner that renders the statute consistent, useful, and logical. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 641 (2005). We may consider the consequences that would result from construing the statute one way or another, and, in doing so, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Village of Lake in the Hills v. Niklaus*, 2014 IL App (2d) 130654, ¶ 15.

¶ 22    The purpose of the Condo Act is to govern the affairs of Illinois condominium associations. *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 90 (2004). The Condo Act establishes procedures for the creation, sale, and operation of condominiums. It regulates the duties of boards of managers, as well as condominium associations and unit owners.

¶ 23    Section 18.4(f) of the Condo Act sets forth the powers and duties of a board of managers, which include "*obtain*[*ing*] *adequate and appropriate kinds of insurance*." (Emphasis added.) 765 ILCS 605/18.4(f) (West 2010). Section 12 regulates the types of insurance that condominium associations must obtain, including property insurance on the common elements and other areas of the property (765 ILCS 605/12(a)(1) (West 2010)), general liability insurance against claims and liabilities arising in connection with the ownership, existence, use, and management of the property (765 ILCS 605/12(a)(2) (West 2010)), and directors' and officers' liability coverage (765 ILCS 605/12(a)(3)(D) (West 2010)). When these subsections are read with section 18.4(f), it is clear that the legislature intended that the board of managers has the duty to obtain adequate and appropriate insurance coverage as set forth in section 12.

¶ 24    Nowhere in the Condo Act is there an explicit statement requiring an insurance producer to issue or deliver an insurance policy that strictly complies with section 12(a). By contrast, section 7-601 of the Illinois Vehicle Code (625 ILCS 5/7-601 (West 2010)) specifically sets forth minimal requirements and expressly states that the insurance policy issued must be in accordance with the requirements of sections 143a and 143a-2 of the Illinois Insurance Code (215 ILCS 5/143a, 143a-2 (West 2010)). We agree with defendant that subjecting an

insurance producer to a vague provision in the Condo Act, without reference to the Insurance Code, is unjust and cannot be what the legislature intended in enacting section 12, particularly given the duties and responsibilities specified in the other provisions of the Condo Act.[2] That the Condo Act regulates only condominiums, and that it is aimed squarely at the duties of a board of managers in obtaining adequate and appropriate kinds of insurance, implies that the objective of section 12 is not to regulate the business of insurance, which is already heavily regulated, but to impose certain insurance-related obligations on the association and its board, not on insurance producers. See *Citizens Property Insurance Corp. v. River Manor Condominium Ass'n*, 125 So. 3d 846, 853 (Fla. Dist. Ct. App. 2013) (an insurance provision in the Florida Condominium Act was not intended to impose a mandatory obligation on insurance carriers).

¶ 25    The legislative history of section 12 bolsters our conclusion. Public Act 92-518, which became effective June 1, 2002, rewrote section 12, which prior thereto read, in relevant part:

> "Insurance. (a)(1) The board of managers shall have the authority to and shall obtain *** insurance for the property against loss or damage by fire and such other hazards as are covered under standard extended coverage provisions for the full insurable replacement cost of the common elements and the units. Every insurer issuing a policy against loss or damage by fire and such other hazards as are covered under standard extended coverage to a condominium association shall print on or attach to the premium notice the following statement: 'The Condominium Property Act requires every condominium association to obtain insurance for the property against loss or damage by fire and such other hazards as are covered under the standard extended coverage provisions for the full insurable replacement costs. This policy may or may not satisfy this requirement. Please examine your policy carefully to determine if it complies with these requirements.' " 765 ILCS 605/12(a)(1) (West 2000).

¶ 26    An amendment to section 12(a)(1), first introduced by the Senate in February 2001, provided, in relevant part, that "[a] condominium association must maintain the following insurance coverage." 92d Ill. Gen. Assem., Senate Bill 1046, 2001 Sess.

¶ 27    On August 3, 2001, the Governor returned Senate Bill 1046 with specific recommendations for change. The Governor recommended the following, in relevant part:

> "Senate Bill 1046 involves the very detailed and complicated issue of insurance coverages required to be provided to condominium associations in the State of Illinois. The insurance industry requested an amendatory veto to correct what they believe to be minor technical errors in the bill. They have worked with the Chicago Bar Association, the primary organization supporting this legislation, to secure their support for these changes. The *** specific recommendations for change that they have made are technical in nature and do not change the substance of this legislation.
>
>     The first change makes it clear that the changes in coverages are to be made on each condominium association insurance policy during the calendar year 2002 at the

---

[2]Public Act 98-762 (eff. June 1, 2015) amends section 12. It adds a provision that specifies the required combined total of insurance coverage for demolition costs and increased costs of construction as no less than 10% of each insured building's value or $500,000, whichever is less. As the amendment is not effective until June 1, 2015, it does not affect our determination here.

time of renewal of that policy. Without this clarification, it is possible that insurance carriers would have to non-renew or cancel their insurance coverages on condominium associations, which would be unnecessarily disruptive and clearly not the intent of the bill sponsors.

The second change involves clarification of the new requirement that condominium association insurance coverage include 'coverage for municipal building code requirements'. This phrase is ambiguous and could result in insurance coverages being substantially different throughout the State of Illinois. The intent of this section is to make sure that in the event of a covered loss by a condominium association, the repairs are made consistent with the applicable building code. Many times, these types of building code upgrades cost more than if the property was restored to its original condition. With this change the insurance coverage will recognize the increased cost of construction due to building code requirements.

\*\*\*

For these reasons, I hereby return Senate Bill 1046 with the following recommendations for change:

on page 1, by replacing lines 8 and 9 with the following:

'(a) Required coverage. No policy of insurance shall be issued or delivered to a condominium association, and no policy of insurance issued to a condominium association shall be renewed, unless the insurance coverage under the policy includes the following:'; and

on page 1 by replacing line 18 with the following:

'the increased cost of construction due to building code requirements, at the time the' \*\*\*." 92d Ill. Gen. Assem., Senate Bill 1046, 2001 Sess. (Governor's Message).

¶ 28    Before the Senate accepted the changes proposed by the Governor's amendatory veto, Senator John J. Cullerton stated:

"The insurance industry, after the bill passed, made some recommendations to the Governor, which are really minor and technical in nature. They don't have any effect on the substance of the bill, and I move to accept it. They clarify that the new coverage requirements apply to existing policies at the time of renewal and to all new policies upon issuance or delivery. It clarifies that property insurance coverage must include increases in construction costs due to municipal code–building code requirements. \*\*\* I would ask that we accept the Governor's changes." 92d Ill. Gen. Assem., Senate Proceedings, Nov. 14, 2001, at 20 (statements of Senator Cullerton).

Both houses subsequently accepted the Governor's recommendations on November 27, 2002.

¶ 29    It is clear that, prior to the enactment of Public Act 92-518, only the board of managers was explicitly identified as having the duty to obtain required insurance. The original version of Senate Bill 1046 placed the duty of acquiring adequate insurance on the condominium association. While the Governor's recommendations removed the unambiguous reference to the association's duty, both the Governor and Senator Cullerton viewed the changes as having no effect on the substance of the bill. And there is nothing in the legislative history to suggest that the changes were made with the intent to impose a duty on insurance producers or any entity other than the board of managers. The changes concerned when the board of

managers must reassess its insurance needs and required it to obtain property insurance to cover increases in construction costs due to municipal building code requirements.

¶ 30    We therefore hold that section 12(a)(1) is intended to regulate the insurance obligations of boards of managers of condominium associations by specifying the types of insurance that boards are required to procure and when they must reassess their insurance needs. Interpreting the statute as plaintiff urges would place on the insurance industry a burden not contemplated by the legislature, to procure sufficient insurance to cover the full insurable replacement cost of the insured property, including increased costs due to building code requirements.

¶ 31    We note also that section 754.30(c) of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 754.30(c) (1991)) provides that an insurer is not required to extend coverage for risks that cannot be assessed without inspecting improvements to insured property. Subjecting an insurance producer to a duty under section 12 of the Condo Act would directly conflict with section 754.30(c) of Title 50 of the Administrative Code, a result that the legislature certainly did not intend. Section 12 does not impose on an insurance producer a duty giving rise to a statutory cause of action against that insurance producer.

¶ 32                                    III. CONCLUSION

¶ 33    Because we find that section 12 of the Condo Act does not impose on an insurance producer a duty giving rise to a statutory cause of action against that insurance producer, our answer to the first certified question is in the negative and it is dispositive of the remaining two certified questions.[3]

¶ 34    Certified questions answered; cause remanded.

---

[3] Plaintiff argues that section 2-2201 of the Insurance Placement Act provides a basis for determining that defendant has a duty under section 12 of the Condo Act to procure an insurance policy that complies with section 12. However, we were not asked to address this issue, and our opinion in no way makes any comment on whether and to what extent section 2-2201 provides such a duty. This court's examination in an appeal under Rule 308 is strictly limited to the questions certified by the trial court. *Thompson v. Gordon*, 221 Ill. 2d 414, 426 (2006) (citing *In re M.M.D.*, 213 Ill. 2d 105, 113 (2004)).