ERIN SNYDER, by Her Mother and Next Friend, Dawn Snyder, *et al.*, Plaintiffs-Appellants, v. JACK OLMSTEAD, Defendant-Appellee.

Third District    No. 3—93—0678

Opinion filed May 20, 1994.—Rehearing denied June 23, 1994.

Hasselberg & Rock, of Peoria (Jeffrey B. Rock, of counsel), for appellants.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Daniel L. Johns, of counsel), and Beal, Pratt & Pratt, of Monmouth (Jane Hartley Pratt, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Following a tractor accident that occurred on defendant's property, plaintiffs brought suit accusing defendant of negligence and willful and wanton conduct. Defendant filed a motion for judgment

on the pleadings, asserting that he was immune from negligence claims under the Recreational Use of Land and Water Areas Act. (745 ILCS 65/1 *et seq.* (West 1992).) Defendant also filed a motion to dismiss, challenging the sufficiency of the willful and wanton allegations. The trial judge dismissed all counts, and plaintiffs filed this appeal. We reverse the dismissal of the negligence counts and affirm the dismissal of the willful and wanton counts.

In their complaint, plaintiffs Erin, Grant, Whitney, Dawn and Lyle Snyder alleged that defendant Jack Olmstead held a 50% beneficial interest in a land trust that owned a parcel known as Wallstead Acres. On this property, Olmstead owned, stored and maintained a farm tractor equipped with a bucket. Plaintiffs alleged that the tractor's hand brake could be disengaged with light pressure applied to the tractor's brake pedals, and defendant knew this.

According to the complaint, defendant Olmstead did not allow persons on Wallstead Acres unless they had a specific invitation and he was on the property. On September 3, 1991, defendant invited plaintiffs and two other families to a picnic outing at Wallstead Acres. During the course of the picnic, defendant operated the tractor and gave rides to Erin, Whitney and Grant Snyder, ages 10, 9 and 6, respectively. After the rides, defendant set the hand brake but neither put the tractor into gear nor lowered the bucket so that it made contact with the ground. After parking the tractor, defendant allegedly allowed the children to play on the tractor and failed to warn them that the braking system could be easily disengaged.

The children accidentally disengaged the brake. The tractor rolled down an incline and struck a tree. Erin Snyder's leg was severed.

Plaintiffs claimed that the defendant's actions were negligent as well as willful and wanton. Erin Snyder sought damages for pain, suffering, anguish, disability, and future lost wages and medical bills. Her parents, Dawn and Lyle Snyder, sought damages in the amount of the medical bills arising from this incident. Erin's siblings, Grant and Whitney, were also named as plaintiffs, seeking damages for negligent infliction of emotional distress. See *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546; *Allen v. Otis Elevator Co.* (1990), 206 Ill. App. 3d 173.

As aforesaid, defendant responded by filing a motion for judgment on the pleadings, asserting that he was immune from negligence claims under the Recreational Use of Land and Water Areas Act (the Recreational Use Act) (745 ILCS 65/1 *et seq.* (West 1992)). Defendant also filed a motion to dismiss, challenging the sufficiency of the willful and wanton counts. The trial judge granted defendant's motions and dismissed all counts.

On appeal, plaintiffs argue that the trial judge erred in dismissing the negligence counts because (a) the Recreational Use Act does not apply to a situation wherein a landowner invites a small, private group of persons to enter and use property for recreational purposes, and (b) the Act does not immunize a landowner from injuries arising from his own active negligence. Plaintiffs also argue that the trial judge erred in finding that the allegations of willful and wanton conduct were insufficient as a matter of law.

Since the trial court's dismissal order was based upon defendant's motion to dismiss and motion for judgment on the pleadings, this court must accept as true the allegations contained in the complaint. (*Charles v. Seigfried* (1993), 251 Ill. App. 3d 1059, 1060; *Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 182.) Here, the complaint alleged that defendant Olmstead did not allow persons on Wallstead Acres unless they had a specific invitation and Olmstead was on the property and that, on September 3, 1991, defendant invited plaintiffs and two other families to a picnic outing at Wallstead Acres.

Thus, the first issue presented is whether the Recreational Use Act extends immunity to a property owner who prohibits the general public from using his property for recreational purposes, but does invite a small, private group of persons to enter and use the property. We conclude that under such circumstances the Act does not apply.

As a general rule, a possessor of land who holds it open to the public is under a duty to the members of the public who enter in response to his invitation to protect them against unreasonable risk of physical harm. (*Loomis v. Granny's Rocker Nite Club* (1993), 250 Ill. App. 3d 753, 758, citing Restatement (Second) of Torts § 314A (1965).) However, in 1965, the Illinois legislature enacted a statute the purpose of which is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." (Ill. Rev. Stat. 1965, ch. 70, par. 31.) Now known as the Recreational Use of Land and Water Areas Act (745 ILCS 65/1 *et seq.* (West 1992)), the statute has been amended on several occasions. Yet, with the exception of also encouraging owners to also make land and water areas available for "conservation purposes," the purpose of the Act has remained constant. 745 ILCS 65/1 (West 1992).

The Recreational Use Act presently provides that an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. (745 ILCS 65/3 (West 1992).) The legislature has declared:

"[A]n owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational or conservation purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by any act or omission of such person or any other person who enters upon the land.

(d) Assume responsibility for or incur liability for any injury to such person or property caused by any natural or artificial condition, structure or personal property on the premises." (745 ILCS 65/4 (West 1992).)

The Recreational Use Act does not immunize willful and wanton conduct by the owner, nor does it apply to situations wherein the owner charges a fee for permission to go upon the land. 745 ILCS 65/6 (West 1992).

The definitions of many terms within the Recreational Use Act are rather broad. "Land" includes roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty. (745 ILCS 65/2(a) (West 1992).) "Recreational or conservation purpose" means any activity undertaken for conservation, resource management, exercise, education, relaxation, or pleasure on land owned by another. (745 ILCS 65/2(c) (West 1992).) "Person" includes any person, regardless of age, maturity, or experience, who enters upon the land for recreational purposes. 745 ILCS 65/2(e) (West 1992).

Defendant argues that, as an owner of land, he owed no duty of care to keep the premises safe or give any warning because plaintiffs were "persons" invited upon and used his land for recreational purposes. Plaintiffs assert that the Recreational Use Act is inapplicable since its purpose is to encourage owners to make land and water areas available to the public for recreational or conservation purposes, but here the owner merely made his property available to a limited number of private invitees.

Resolution of this issue requires this court to engage in statutory interpretation. According to the first rule of statutory construction, a court has a duty to ascertain and give effect to the intent of the legislature. (*People v. Gamblin* (1993), 251 Ill. App. 3d 769, 770.) In determining the intent of the legislature, a court must consider the entire statute, as well as the evil to be remedied and the object and purpose to be obtained. (*In re A.K.* (1993), 250 Ill. App. 3d 981.) Each word, clause, or sentence must not be rendered superfluous but must,

if possible, be given some reasonable meaning. *Kaszubowski v. Board of Education* (1993), 248 Ill. App. 3d 451, 457-58.

Where the statutory language admits of two constructions, one of which would render the enactment absurd and illogical, while the other would render it reasonable and sensible, the former construction must be avoided. (*Kaszubowski*, 248 Ill. App. 3d at 457.) If a statute's language is capable of being understood by reasonably well-informed persons in different ways, an ambiguity exists, and it is proper to examine sources other than the statute's language to ascertain the legislative intent. (*Costello v. Governing Board of Lee County Special Education Association* (1993), 252 Ill. App. 3d 547, 557.) When several statutes relate to the same subject, they are presumed to be governed by one spirit and a single policy, and a court should consider the entire statutory scheme *in pari materia* in a fashion which renders the statutes consistent, useful and logical. *Costello*, 252 Ill. App. 3d at 557.

Two Illinois statutes govern the responsibilities, liabilities and immunities of owners of private property used for recreational purposes. The Recreational Use Act applies to lands used on a casual basis for recreational purposes. The Campground Licensing and Recreational Area Act (210 ILCS 95/1 *et seq.* (West 1992)) governs land maintained primarily for recreational purposes. *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, *aff'd* (7th Cir. 1979) 597 F.2d 614.

A cursory reading of the Recreational Use Act might lead one to conclude that, with the exception of willful and wanton conduct, the Act immunizes all landowners who invite or permit without charge any person to use such property for recreational or conservation purposes. This is not a correct interpretation of the Recreational Use Act. On several occasions courts have limited the scope of immunity after reading the Recreational Use Act and the Campground Licensing Act *in pari materia* and considering the underlying purpose of the Recreational Use Act. *Logan v. Old Enterprise Farms, Ltd.* (1989), 188 Ill. App. 3d 920, 934, *rev'd on other grounds* (1990), 139 Ill. 2d 229; *Phillips v. Community Center Foundation* (1992), 238 Ill. App. 3d 505; *Miller v. United States* (7th Cir. 1979), 597 F.2d 614, 616.

In deciding this case, we are guided by the purpose of the Recreational Use Act:

> "to encourage owners of land to make land and water areas available to the public for recreational or conservation purposes by limiting their liability toward persons entering thereon for such purposes." (745 ILCS 65/1 (West 1992).)

Although the word "public" is not defined by the Act, the term

connotes "an unexclusive group of persons." (73 C.J.S. *Public*, at 330 (1983).) "Public" has been defined as "[t]he whole body politic, or the aggregate of the citizens of a state, nation, or municipality *** the people" and "[c]ommon to all or many; general; open to common use *** not limited or restricted to any particular class of the community." Black's Law Dictionary 1104 (5th ed. 1979).

■ We believe that the purpose of the Recreational Use Act would not be advanced by applying the Act to a situation where an owner does not open his property to the public, but simply invites a few private persons to a picnic. If we were to hold otherwise, absurd results would occur. Absent consideration of the underlying legislative purpose, the Act's broad definitions of "land," "recreational or conservation purpose" and "person" would eviscerate the common law by immunizing all homeowners from all negligence claims of all guests who enter for "exercise, education, relaxation, or pleasure." (745 ILCS 65/2 (West 1992).) We are unwilling to conclude that the Recreational Use Act immunizes every property owner who invites guests to dine, watch television, swim, or allow children to play together.

In so ruling, we wish to stress that in order to seek protection under the Act, a landowner need not "allow all persons to use the property at all times." (*Johnson v. Stryker Corp.* (1979), 70 Ill. App. 3d 717, 721.) Farmers who cannot open their property to everyone at all times might nonetheless open their land for one season, such as hunting season or winter, or on certain days of the week. *Stryker*, 70 Ill. App. 3d at 721.

Inasmuch as we reverse the dismissal of the negligence counts for the reasons stated above, we need not address whether the Recreational Use Act immunizes a landowner from injuries arising from his own active negligence.

The only remaining issue is whether the trial judge erred in dismissing the counts alleging willful and wanton conduct. As the Illinois Supreme Court has stated, there exists a qualitative difference between negligence and willful and wanton conduct. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 450.) "Willful and wanton conduct is found where an act was done ' "with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved." ' " (*Burke*, 148 Ill. 2d at 451, quoting *Lynch v. Board of Education of Collinsville Community Unit No. 10* (1980), 82 Ill. 2d 415, 430, quoting *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29.) The alleged willful or wanton conduct must be manifested in the facts alleged; conclusory allegations or mere characterizations of alleged acts as willful are insufficient. *Mitchell*, 189 Ill. App. 3d at 183.

■ In this case, plaintiffs alleged that the tractor's hand brake could be disengaged with light pressure applied to the tractor's brake pedals, and defendant knew this. Plaintiffs asserted that defendant was liable because, after he gave the children rides on his tractor, he set the hand brake but neither put the tractor into gear nor lowered the bucket so that it made contact with the ground. After parking the tractor, defendant allegedly allowed the children to play on the tractor and failed to warn the children that the braking system could be easily disengaged. By our view these contentions support only a claim of negligence.

Additionally, plaintiffs alleged that on an unspecified prior date, defendant gave rides to the minor plaintiffs, that defendant left the children unattended on the tractor and the tractor began to roll down an incline, that the minors' mother rescued the children, and that the defendant observed this prior incident. These additional claims do not allege willful and wanton conduct on September 3, 1991. Plaintiffs failed to allege what caused the tractor to roll during the prior incident; that anyone was injured, or in danger of injury, in the prior incident; or that as a result of the prior incident, the defendant gained knowledge or understanding which he then disregarded on September 3, 1991. Under the facts pled, it is possible that the prior incident was the result of completely different acts, omissions, or circumstances. Also, on September 3, 1991, defendant may have taken action to prevent a recurrence of the prior incident. Thus, the trial judge correctly ruled that plaintiffs failed to allege willful and wanton conduct.

For the foregoing reasons, the circuit court's dismissal of the willful and wanton counts is affirmed, the dismissal of the negligence counts is reversed, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part; and remanded.

BRESLIN and McCUSKEY, JJ., concur.