David and Kimberly **PERRINE** and David Perrine as guardian ad litem for Ryan Perrine, a minor, Plaintiffs and Appellants,

v.

**KENNECOTT MINING CORPORATION,** fka Kennecott Copper Corporation, a New York corporation, Milton A. Bailey, and John Does 1–50, Defendants and Appellees.

No. 940610.

Supreme Court of Utah.

Feb. 20, 1996.

Jerrald D. Conder, West Valley City, for the Perrines.

Russell C. Fericks, Bret M. Hanna, Salt Lake City, for Kennecott.

David W. Overholt, M. Darin Hammond, Salt Lake City, for Bailey.

RUSSON, Justice:

David Perrine, individually and as guardian ad litem for his four-year-old son Ryan, and Kimberly Perrine, Ryan's mother, appeal from the Third District Court's grant of defendants' motions for summary judgment. The trial court granted the motions, holding that the Perrines' claims were barred under Utah's Limitation of Landowner Liability Act. We reverse and remand for further proceedings.

## BACKGROUND

Kennecott Mining Corporation (Kennecott) owns thirty acres of land which is central to the present controversy. In 1975, Kennecott leased this property to the Community Re-

creation Association (CRA) in exchange for $1 per year. CRA is an organization of dues-paying Kennecott employees; defendant Milton Bailey is its secretary.

The lease required CRA to use the leased land solely for the following purpose:

Recreational uses, which shall include the operation of a race track, rodeo grounds, corrals, chutes and related facilities, together with a site for a mobile home for the use of a grounds attendant, provided such use complies with all state and county regulations, unless Lessor shall consent in writing to the use of said premises for some other purpose.

The lease did not require that the land remain open to the general public.

CRA subsequently permitted the Magna Mountain Riders (MMR), a rodeo club of dues-paying members, to take possession and oversee use of the property subject to the conditions of the lease. MMR restricted use of the property to MMR's members and guests and to individuals who pay to board animals. A caretaker resided on the property, and "no trespassing" signs were posted.

On September 27, 1992, David Perrine and his son Ryan were on the property as guests of Kimberly Perrine, an MMR member. While his father was horseback riding, Ryan fell from a grandstand onto a metal fence, breaking his femur.

The Perrines filed this lawsuit against Kennecott and Bailey, alleging liability for Ryan's injury. Each defendant moved for summary judgment, insisting that the Landowner Liability Act precluded the Perrines' personal injury claims. The specific portion of the Act relied upon provides:

Except as specifically provided in Subsection (1) of Section 57–14–6, an owner of land who either directly or indirectly invites or permits without charge any person to use the land for any recreational purpose does not thereby:

(1) make any representation or extend any assurance that the premises are safe for any purpose;

(2) confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed;

(3) assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of the person or any other person who enters upon the land; or

(4) owe any duty to curtail his use of his land during its use for recreational purposes.

Utah Code Ann. § 57–14–4. The Act defines an "owner" as "the possessor of any interest in the land, whether public or private land, a tenant, a lessee, and an occupant or person in control of the premises." Utah Code Ann. § 57–14–2(2).

The trial court granted both Kennecott's and Bailey's summary judgment motions. The trial court reasoned that both Kennecott and Bailey fall within the statute's scope because Kennecott, as title holder, and Bailey, as a "person in control of the premises," are both owners within the Act's meaning, and furthermore, neither Kennecott nor Bailey charged an admission fee, neither excluded the public from the property, and the property was used for recreational purposes.

On appeal, the Perrines argue that the trial court incorrectly concluded that the Landowner Liability Act immunizes Kennecott and Bailey. To gain immunity under the Act, they argue, landowners must make their land available to all members of the public, not just a few. Since Kennecott's property was not open to the general public but limited to MMR's constituents, guests, and animal boarders, the Act, they argue, does not apply. In response, Kennecott and Bailey argue that (1) the Landowner Liability Act does not condition immunity on holding property open to all members of the public but affords immunity as long as the property is open to some members of the public; and (2) even if the property must be held open to the entire public, the trial court's grant of summary judgment was correct because neither Kennecott nor Bailey restricted public access to the land.

## ANALYSIS

Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d

231, 235 (Utah 1993). Because we resolve only legal issues on appeal from a summary judgment, we do not defer to the trial court's conclusions of law but review them for correctness. *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989); *accord Higgins*, 855 P.2d at 235. On appeal, "[w]e determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Ferree*, 784 P.2d at 151 (citing *Bushnell Real Estate, Inc. v. Nielson*, 672 P.2d 746, 749 (Utah 1983); *Bowen v. Riverton City*, 656 P.2d 434, 436 (Utah 1982)).

The legislature has specifically expressed its purpose in enacting the Landowner Liability Act: "to encourage public and private owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes." Utah Code Ann. § 57–14–1. The Act frees owners of liability for most injuries occurring on their land [1] if the owners "either directly or indirectly invite[ ] or permit[ ] without charge any person to use [their] land for any recreational purpose." Utah Code Ann. § 57–14–4. Under the Act, "recreational purpose" includes, "but is not limited to, . . . hunting, fishing, swimming, skiing, snowshoeing, camping, picnicking, hiking, studying nature, waterskiing, engaging in water sports, using boats, using off-highway vehicles or recreational vehicles, and viewing or enjoying historical, archeological, scenic, or scientific sites." Utah Code Ann. § 57–14–2(3).

■ "[T]his Court's primary responsibility in construing legislative enactments is to give effect to the Legislature's underlying intent." *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982); *see also* Utah Code Ann. § 68–3–2 ("The statutes . . . of this state . . . are to be liberally construed with a view to effect the objects of the statutes and to promote justice."). Generally, the best indication of that intent is the statute's plain language. *Berube v. Fashion Centre, Ltd.*, 771 P.2d

1033, 1038 (Utah 1989). Thus, we will interpret a statute according to its plain language, unless such a reading is unreasonably confused, inoperable, or in blatant contravention of the express purpose of the statute. *West Jordan*, 656 P.2d at 446. In addition, "statutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and . . . interpretations are to be avoided which render some part of a provision nonsensical or absurd." *Millett v. Clark Clinic Corp.*, 609 P.2d 934, 936 (Utah 1980); *see Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 693 (Utah 1979); *Curtis v. Harmon Elecs., Inc.*, 575 P.2d 1044, 1046 (Utah 1978).

Section 57–14–1 codifies the legislative intent to induce owners to make land "available to the public" for recreational purposes. Utah Code Ann. § 57–14–1. This notion is also expressed in the preamble of the model act upon which the Landowner Liability Act is patterned. "Because the Utah legislature adopted the model act virtually unchanged, its preamble is relevant in construing the legislature's intent. . . ." *Crawford v. Tilley*, 780 P.2d 1248, 1250 (Utah 1989). The preamble explains that " 'in those circumstances where private owners are willing to make their land *available to members of the general public* without charge, it is possible to argue that every reasonable encouragement should be given to them.' " *Id.* (emphasis added) (quoting Council of State Governments, *Public Recreation on Private Lands: Limitations on Liability*, 24 Suggested State Legislation 150 (1965)). Although the Act does not define the term "public," in its plain meaning the term connotes "an unexclusive group of persons." 73 C.J.S. *Public* (1983). "Public" has been defined as "the whole body of people" and "[o]pen to all; . . . open to common use . . . not limited or restricted to any particular class of the community." *Black's Law Dictionary* 1393 (4th ed. 1951). The term "public" as used in instruments intended to confer a benefit upon the public, such as the Land-

---

1. The Act does not limit a landowner's "liability which otherwise exists for: (a) willful or malicious failure to guard or warn against a dangerous condition . . . [or] (b) deliberate, willful, or malicious injury to persons or property." Utah

Code Ann. § 57–14–6(1)(a), (b); *see Golding v. Ashley Central Irrigation Co.*, 902 P.2d 142, 145–46 (Utah 1995); *Golding v. Ashley Central Irrigation Co.*, 793 P.2d 897, 901 (Utah 1990).

owner Liability Act, has been defined as "open to all" and "not limited to any particular group." *See, e.g., City of Chicago v. Pennsylvania R.R.,* 41 Ill.2d 245, 242 N.E.2d 152, 155 (1968) ("public," used to describe a bridge, means that the public generally has free and unrestricted rights to use it); *Gradison v. Ohio Oil Co.,* 239 Ind. 218, 156 N.E.2d 80, 86 (1959) ("public," as used in condemnation provision limiting eminent domain power for public use, means the public has right to use the condemned property without discrimination); *Lander v. Village of South Orange,* 58 N.J. 509, 279 A.2d 633, 639 (1971) ("public," as used in deed requiring that land be used as a public park, means open to all); *Benvenue Parent–Teacher Ass'n v. Nash County Bd. of Ed.,* 4 N.C.App. 617, 167 S.E.2d 538, 541 ("public," as used to describe schools that could be publicly funded, means open to all in locality), *appeal dismissed,* 275 N.C. 675, 170 S.E.2d 473 (1969); *City of Lakewood v. Thormyer,* 154 N.E.2d 777, 791 (Ohio C.P.1958) ("public," as used in condemnation provision limiting eminent domain power for public use, means the whole body of mankind), *aff'd,* 111 Ohio App. 403, 157 N.E.2d 431 (1959), *aff'd,* 171 Ohio St. 135, 168 N.E.2d 289 (1960); *Frawley Ranches, Inc. v. Lasher,* 270 N.W.2d 366, 369 (S.D.1978) (right-of-way is "public" if everyone who desires may lawfully use it). Thus, under the plain meaning of the Landowner Liability Act, landowners must make their land "open to all" and not "restricted to any particular class in the community" to qualify for immunity under the Act.

If the plain meaning of the Landowner Liability Act was ignored and landowners who opened their land to only selected members of the public could nevertheless qualify for immunity, the result would be nonsensical and contrary to the Act's stated purpose. For example, operation of the Act under the proposed interpretation would immunize even homeowners from the negligence claims of social guests invited for recreational purposes. *See Snyder v. Olmstead,* 261 Ill. App.3d 986, 199 Ill.Dec. 703, 708, 634 N.E.2d 756, 761 (1994), *appeal denied,* 157 Ill.2d 523, 205 Ill.Dec. 187, 642 N.E.2d 1304 (1994); *accord Mozier v. Parsons,* 852 F.Supp. 925, 932 (D.Kan.1994) (holding that Kansas Recreational Use Statute does not immunize

homeowner from liability for wrongful death of child who drowned in backyard swimming pool). To avoid such absurd results, the Act's sweep must accord with its stated purpose.

■ Other courts confronting this issue have resolved it in one of two ways. Some courts condition immunity on land availability to *all* members of the public, reasoning that "[s]ince the purpose of the legislation conferring immunity is to encourage owners of premises suitable for recreational pursuits to open their lands for public use, it follows that where the land in question is not held open to the public, the immunity does not apply." *Loyer v. Buchholz,* 38 Ohio St.3d 65, 526 N.E.2d 300, 302 (1988) (footnote omitted); *see Mozier,* 852 F.Supp. at 932; *Gibson v. Keith,* 492 A.2d 241, 244 (Del.1985); *Snyder,* 199 Ill.Dec. at 708, 634 N.E.2d at 761; *McNamara v. Cornell,* 65 Ohio App.3d 269, 583 N.E.2d 1015, 1017 (1989); *LePoidevin v. Wilson,* 111 Wis.2d 116, 330 N.W.2d 555, 563 (1983). Other courts, however, confer immunity irrespective of whether the land is held open to the general public, because either the applicable statutes contain no purpose to foster land access for the recreating public, *see Collins v. Martella,* 17 F.3d 1, 4 (1st Cir. 1994); *Mansion v. United States,* 945 F.2d 1115, 1117–18 (9th Cir.1991), or the statutes' use of the word "public" did not mandate that the land "must be open in its entirety to everyone simultaneously." *Scrapchansky v. Town of Plainfield,* 226 Conn. 446, 627 A.2d 1329, 1332 (1993); *see Stout v. United States,* 696 F.Supp. 538, 539 (D.Haw.1987). We find the reasoning of the first group of cases to be more persuasive, especially in light of our Act, which was enacted "to encourage ... owners of land to make land and water areas *available to the public* for recreational purposes." Utah Code Ann. § 57–14–1 (emphasis added). Therefore, to qualify for immunity under the Landowner Liability Act, landowners must make their land available to all members of the general public. Landowners may impose reasonable restrictions on the type of recreational activities allowed on their land, but they must allow all members of the public to engage in the approved activities to qualify for immunity.

Turning to the facts of this case, Kennecott and Bailey clearly do not fall within the scope of the Landowner Liability Act. To qualify for immunity, an owner must "directly or indirectly invite[ ] or permit[ ] without charge" the general public to use the land for recreational purposes. Utah Code Ann. § 57–14–4. Neither Kennecott nor Bailey satisfied this requirement. Kennecott did not directly or indirectly invite or permit the public onto its land. Rather, Kennecott leased the land to an exclusive group for its own recreational purposes, which included "operation of a race track, rodeo grounds, corrals, chutes and related facilities." Similarly, Bailey does not qualify under the Act because he relinquished control of the land to an exclusive group for its own recreational purposes, not those of the general public. Therefore, neither Kennecott nor Bailey falls within the Landowner Liability Act's protective scope.[2]

## CONCLUSION

The trial court incorrectly granted summary judgment in favor of Kennecott and Bailey. Accordingly, we reverse and remand for further proceedings.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.

---

2.  Because of this ruling, we need not address the Perrines' other arguments for reversal, that (1) Kennecott and Bailey are excepted from the Act because of their "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity," Utah Code Ann. § 57–14–6(1)(a), and (2) Kennecott and Bailey are excepted from the Act because the membership dues paid by CRA members and MMR members and the $1 per year rent paid by CRA to Kennecott amount to admission charges within the Act's meaning.