MANSFIELD, Justice
(dissenting).
Sometimes two acts of generosity collide and lead to an unfortunate result. That is what happened in this case. Matthew and Diana Stewart invited a kindergarten class to visit their dairy farm on a field trip. Kimberly Sallee volunteered her time to serve as a chaperone for the visit. While Sallee was accompanying the children during their playtime in a hayloft, she fell through a chute that was covered by hay bales and broke her wrist and ankle. Sal-lee sued the Stewarts for her injuries. The Stewarts answered and asserted Iowa’s recreational use immunity, Iowa Code §§ 461C.1-.8 (2009), which limits the liability of landowners who allow others to *158 use their premises without charge for recreational purposes.
Sallee argued for several reasons that the immunity did not apply. The district court disagreed and granted summary judgment to the Stewarts. I would affirm the district court for the reasons set forth herein.
While I believe the majority opinion displays the usual scholarship characteristic of its author, it suffers from conceptual flaws. In particular, it overemphasizes what other states have done and underem-phasizes what Iowa has done. As my colleagues acknowledge, when we get to the critical provisions involved in this case, Iowa’s recreational use law is largely sui generis. Therefore, I believe it is important to focus on the evolution of our law. Iowa’s recreational use statute, from the very outset, was designed to encourage farmers to offer free recreational use of their lands and appurtenant buildings. It turns this law upside down to hold that jumping in a hayloft during a gratuitous field trip was not such a use.
I. Iowa’s Recreational Use Law.
As first enacted in 1967, Iowa’s statute was limited to private agricultural lands and “buildings, structures and machinery or equipment appurtenant thereto.” 1967 Iowa Acts ch. 149, § 2. Thus, the original definition of “land” covered by the act read as follows:
“Land” means land used for agricultural purposes, including marshlands, timber, grasslands and the privately owned roads, water, water courses, private ways and buildings, structures and machinery or equipment appurtenant thereto.
Id. Accordingly, from the very beginning, our general assembly sought to protect agricultural lands as well as “buildings, structures and machinery or equipment” that were “appurtenant thereto,” such as a barn. Id.
Meanwhile, the legislature’s original; unique-to-Iowa definition of “recreational purpose” read as follows:
“Recreational purpose” means the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites while going to and from or actually engaged therein.

Id.

In 1971, the legislature added “horseback riding” to the list of approved recreational purposes. 1971 Iowa Acts ch. 129, § 1. Later in the same session, the legislature expanded the definition of “recreational purpose” to include “motorcycling” and “snowmobiling,” while it substituted the phrase “other summer and winter sports” for “winter sports.” Id. ch. 130, § 1. Although we do not have helpful legislative history for the second 1971 amendment, it seems logical to conclude that the legislature wanted to obviate the need for future piecemeal amendments by including some kind of a catchall — other summer and winter sports.
In 1978, the legislature expanded the definition of “land” to include “abandoned or inactive surface mines” and “caves,” in addition to “land used for agricultural purposes.” 1978 Iowa Acts ch. 1066, § 1. In 1988, the legislature added “trapping” to the list of covered “recreational purposes.” 1988 Iowa Acts ch. 1216, § 46.
In 2006, the general assembly inserted the phrase “or urban deer control” where it appears in the current version of the statute. See 2006 Iowa Acts ch. 1121, §§ 1, 4, 5. Simultaneously, the legislature greatly expanded the previous definition of *159 “land.” Id. § 2. Until then, as noted, only certain categories of land had been covered, one of those categories being agricultural land. The 2006 legislation inserted the phrase “private land located in a municipality including,” essentially bringing all private land within the scope of the statute. Id.[10] A final amendment, in 2012, added “all-terrain vehicle riding” within the definition of “recreational purpose.” See 2012 Iowa Acts ch. 1100, § 58.
We have previously referred to chapter 461C as “a blanket abrogation of duty to all recreational users (except as provided in section [461C.6]).” Peterson v. Schwertley, 460 N.W.2d 469, 471 (Iowa 1990) (finding that the statute barred a claim brought by a young man who had trespassed on the defendant’s property to go swimming and was paralyzed by a fall).
II. Does the Immunity Apply to the Stewarts’ Barn?
The first question to be answered is whether the Stewarts’ dairy barn is the kind of property to which the recreational use immunity can apply. I think the answer is clear from the statute. The statutory immunity extends to “buildings” and “structures,” see Iowa Code § 461C.2(3), so -long as they are “appurtenant” to a category of “land” that is covered by the statute, see id. The statute nowhere requires an outdoor use, and indeed the reference to buildings is inconsistent with such a restriction.
It is true that courts in other jurisdictions have reached differing conclusions as to the kinds of properties that are covered by their respective recreational use laws. As one court has said, “[W]e observe a widespread conflict among the jurisdictions as to exactly what type of land is intended to be covered by the liability limitation.” Redinger v. Clapper’s Tree Serv. Inc., 419 Pa.Super. 487, 615 A.2d 743, 745 (1992). Thus, the Pennsylvania Supreme Court has held that an indoor swimming pool is not covered. Rivera v. Phila. Theological Seminary, 510 Pa. 1, 507 A.2d 1, 8 (1986) (stating that the legislature intended to limit buildings, structures, machinery, or equipment to “ancillary structures attached to open space lands made available for recreation”). The Louisiana Supreme Court concluded that an outdoor swimming pool was not covered. Keelen v. State, 463 So.2d 1287, 1290 (La.1985) (stating that “when the instrumentality ... is of the type usually found in someone’s backyard, then the statutes afford no protection”). On the other hand, the Massachusetts Supreme Judicial Court has found that the immunity applies to an indoor gymnasium. Seich v. Town of Canton, 426 Mass. 84, 686 N.E.2d 981, 983 n. 5 (1997). And the Ninth Circuit has held that Hawaii’s act covers urban swimming pools. See Palmer v. United States, 945 F.2d 1134, 1135-36 (9th Cir.1991). But see Cassio v. Creighton Univ., 233 Neb. 160, 446 N.W.2d 704, 711 (1989) (holding that Nebraska’s act does not apply to independent indoor recreational facilities, including swimming pools). Given this divergence of views, I think it is most helpful to look at what we did here in Iowa.
When our general assembly enacted Iowa’s recreational use immunity law in 1967, it modified the proposed model act’s definition of “land.” The model act stated:
*160 “Land” means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
Council of State Governments, Public Recreation on Private Lands: Limitations on Liability, 24 Suggested State Legislation 150, 151 (1965) [hereinafter Council of State Governments]. However, our legislature chose the following language:
“Land” means land used for agricultural purposes, including marshlands, timber, grasslands and the privately owned roads, water, water courses, private ways and buildings, structures and machinery or equipment appurtenant thereto.
1967 Iowa Acts ch. 149, § 2.
Thus, from the outset, our legislature made a decision that Iowa would go its own way and have an immunity directed to agricultural properties. The general assembly stated that the immunity would cover agricultural land “and buildings, structures and machinery or equipment appurtenant thereto.” Id. Hence, the legislature expressly included buildings, so long as they were appurtenant. Black’s Law Dictionary defines “appurtenant” to mean “[a]nnexed to a more important thing.” Black’s Law Dictionary 118 (9th ed.2009). Therefore, a barn that is part of a substantial farm operation like the Stew-arts’ qualifies as an appurtenant building.
My colleagues raise the concern that Iowa’s recreational use immunity could possibly lead to strange results, such as coverage for a backyard barbecue. But this concern, to the extent it exists, follows largely from the legislature’s 2006 expansion of the definition of “land” as part of its urban deer control amendment. This is not a reason to deny the Stewarts’ immunity for activities in an agricultural building that always has been covered by the statute.[11]
Alternatively, my colleagues suggest that because the Stewarts only allowed a few, specified groups on their farm, it was not open to the public and the recreational use immunity does not apply. This too is a misreading of the statute, which contains no such qualification. Section 461 C.3 provides there is no duty owed to “others” who enter or use the property for recreational purposes. Section 461C.4 covers “any person” who is invited or allowed to use the property for recreational purposes. Significantly, we found that Iowa’s recreational use immunity applied in Peterson even though the landowner had posted no trespassing signs and thus the property was not open to the general public. 460 N.W.2d at 470-71. As we explained:
That statute [what is now section 461C.3] simply refers to recreational use by “others.” We believe the word “others” embraces all persons other than the landowner who makes such use of the property.
Id. at 471. Although my colleagues call into question the continued vitality of Peterson, there is no justification for doing so. This precedent is twenty-two years old, and the legislature in 2006 made a substantial modification of the statute without disturbing it. In any event, the case was correctly decided.
As the Missouri Supreme Court has said, in a case holding that a farmer who *161 allowed two turkey hunters onto his property free of charge could assert the same immunity:
The use of the term “public” merely reflects the fact that the statute is designed to encourage landowners with property suitable for certain recreational activities to allow members of the public to participate in those activities. Nowhere does the [Missouri statutory recreational use immunity] require that land be opened to the entire general public, and this Court will not add language to a statute that is clear and unambiguous.
State ex rel. Young v. Wood, 254 S.W.3d 871, 873 (Mo.2008); see also Howard v. United States, 181 F.3d 1064, 1071 (9th Cir.1999) (“The [Hawaii recreational use immunity statute] does not contain a requirement that a landowner allow each and every individual of the general public access and use of the land ... ”); Holden v. Schwer, 242 Neb. 389, 495 N.W.2d 269, 274 (1993) (“[I]n order to facilitate the purpose of [the Nebraska recreational use immunity statute] a landowner need allow only some members of the public, on a casual basis, to enter and use his land for recreational purposes to enjoy the protection of the act.”).[12]
I recognize that some other jurisdictions have ruled otherwise. See Hall v. Henn, 208 Ill.2d 325, 280 Ill.Dec. 546, 802 N.E.2d 797, 799-800 (2003) (holding that Illinois’s recreational use immunity statute does not apply to “landowners who restrict the use of their property to invited guests only”); Loyer v. Buchholz, 38 Ohio St.3d 65, 526 N.E.2d 300, 302 (1988) (holding that Ohio’s statute “does not extend to private owners of residential swimming pools whose social guest is injured while swimming, where the premises in question are not held open for gratuitous recreational use by the general public”); Perrine v. Kennecott Mining Corp., 911 P.2d 1290, 1293 (Utah 1996) (holding that “to qualify for immunity under [Utah’s statute], landowners must make their land available to all members of the general public”). But these courts have done so on the basis that this limitation is necessary because those state statutes would otherwise provide immunity for homeowners from negligence claims brought by social guests who enter for recreational purposes. See Hall, 280 Ill. Dec. 546, 802 N.E.2d at 800 (stating that “defendant’s reading of the Act, while textually plausible, renders an absurd and unjust result”); Loyer, 526 N.E.2d at 302; Perrine, 911 P.2d at 1293. I do not believe we are at liberty to rewrite the statute, at least where the result in this case is not absurd or unjust. Farmers who allow school groups, but not every member of the general public, to enjoy their property for recreational purposes, are still entitled to the benefit of the statute if the other requirements of the immunity have been met.
III. Was Sallee Engaged in a Recreational Purpose?
My colleagues conclude that the immunity should not apply because the excursion to the hayloft was not a recreational purpose. I disagree.
The Stewarts contended that the Sacred Heart kindergarten field trip potentially involved three activities specifically identified in Iowa’s statute: “horseback riding, *162 ... nature study, ... other summer and winter sports.” Iowa Code § 461C.2(5). I believe the third category is dispositive of this ease. As noted, this part of Iowa’s statute is distinctive. To my knowledge, no other state’s definition of “recreational purpose” uses the same “other summer and winter sports” terminology. Therefore, out-of-state cases are of limited value.
The term “sport” has a number of definitions. For example, Merriam-Webster’s Collegiate Dictionary defines sport as “a source of diversion: RECREATION,” and “physical activity engaged in for pleasure,” among other things. See Merriam-Webster’s Collegiate Dictionary 1134 (10th ed.2002).
In City of Marion v. Iowa Department of Revenue & Finance, we held that the department could tax municipal swimming pool admission fees on the theory that these were “fees paid to cities and counties for the privilege of participating in any athletic sports.” 643 N.W.2d 205, 206-08 (Iowa 2002). There, we upheld the department’s interpretation of “athletic sports” as including recreational swimming. City of Marion, 643 N.W.2d at 207. The agency had specifically defined a “sport” as “any activity or experience which involves some movement of the human body and gives enjoyment or recreation.” Id.
On the other hand, a federal district court recently observed that “it is not clear that snorkeling falls within the plain meaning of ‘sports,’ ” relying on other dictionary definitions that require a “sport” to be governed by “form,” “rules,” or “customs.” Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co., 623 F.Supp.2d 1189, 1197-98 (D.Haw.2009).
As I have noted, the “other summer and winter sports” language was part of a 1971 amendment where the legislature also added “motorcycling” and “snowmobiling” to the list of covered activities. 1971 Iowa Acts ch. 130, § 1.1 think that by doing so, the legislature opted for a broader definition of “sports” — similar to the one we upheld in City of Marion — rather than a definition limited to contests governed by forms, rules, or customs. By using the word “other,” the legislature implied that items previously listed in the definition, and particularly motorcycling and snowmobiling which were being added, were also sports. See, e.g., State v. Ashland, 259 Iowa 728, 730, 145 N.W.2d 910, 911 (1966) (stating that “[t]he naming of pistols and revolvers followed by the words ‘other dangerous weapon’ clearly designates the listed items as dangerous weapons by statute”). Those activities would be considered sports only under a broad definition that equated a sport with a form of play or diversion. Snowmobiling is a sport in the sense that it is a form of physical activity engaged in for pleasure, not in the sense that it is a contest governed by forms, rules, or customs, like baseball or ice hockey.
This interpretation would not have led to awkward results at the time, because in 1971 only agricultural lands and appurtenant buildings, structures, machinery, and equipment were covered. In short, I conclude the legislature intended in 1971 to introduce some flexibility into the definition of “recreational purpose” that other states (which used the model act language) already had. In short, while our general assembly had elected not to use the model act’s broader phrasing — “includes, but is not limited to” — in 1967, it nonetheless opened up the definition of “recreational purpose” in 1971 by making clear that other summer and winter sports would be covered.[13]
*163 Under a dictionary definition where “sport” means “a source of diversion: RECREATION” and “physical activity engaged in for pleasure,” jumping in a hayloft clearly qualifies as a sport. See Merriam-Webster’s Collegiate Dictionary 1134 (10th ed.2002). It is true that the activities specifically identified in section 461C.2(5) are normally outdoor activities, but the legislature did not say that sports would only be covered when played outdoors. Frolicking in hay can be and frequently is an outdoor sport. The definition of “land” covers buildings that are appurtenant to covered land, and the inclusion of buildings would not have made sense if the legislature did not mean some indoor activities to be covered by the statute.[14]
Alternatively, my colleagues suggest that even if the children were embarked on a recreational purpose on May 18, 2010, Sallee was not. In other words, chaperoning a recreational activity is not itself a recreational purpose. However, it is sufficient in my view that Sallee was present to help with the class’s recreational activity. For example, the Hawaii Supreme Court has found that the recreational use immunity applied to the claim of a paid scuba instructor who was injured while leading clients across hotel property after a dive. Thompson v. Kyo-Ya Co., 112 Hawai’i 472, 146 P.3d 1049, 1057-58 (2006). As the court put it, “[W]here the plaintiffs presence on the land is closely associated with the presence of individuals whose purpose on the land is purely recreational, the recreational purpose attaches to the plaintiff.” Id. at 1058. Quoting the trial court in that case, the court concluded that the plaintiff was “engaged in ‘an activity in pursuit of the use of the property for recreational purposes.’ ” Id.; see also Palmer, 945 F.2d at 1137-38 (rejecting a grandparent’s argument that he was not engaged in “recreation” because he was supervising his grandchildren who were swimming); Ornelas v. Randolph, 4 Cal.4th 1095, 17 Cal.Rptr.2d 594, 847 P.2d 560, 564 (1993) (stating that “whether plaintiff entered the property to play on the equipment, or merely accompanied the other children at play, is immaterial”); Hafford v. Great N. Nekoosa Corp., 687 A.2d 967, 968-69 (Me.1996) (holding that Maine’s recreational use statute applied to an outfitter who was injured while supplying canoeing and camping enthusiasts); Fetherolf v. State, 7 Ohio App.3d 110, 454 N.E.2d 564, 565-66 (1982) (finding as a matter of law that the plaintiff who was injured while walking toward the beach with his three-year-old daughter was a recreational user, even though his shoulder injury prevented him from doing anything other than sitting and watching while his family swam). But see Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc., 288 Wis.2d 394, 707 N.W.2d 897, 904-06 *164 (Wis.Ct.App.2005) (finding that a chaperone was not engaged in a recreational activity when she fell moving from one building to another at a weekend retreat).[15]
Iowa’s statute applies when there is an “entry or use by others for recreational purposes.” Iowa Code § 461C.3. It applies to “persons entering for such purposes.” Id. Simply stated, this language does not require that each person herself be enjoying the recreational activity so long as her presence on the property is in furtherance of a recreational purpose. It would be a strange result if a farmer could let six-year-olds on his property for fun and enjoyment but had to shoo their adult chaperones away to avoid legal liability.
IV. Does the Record Raise an Issue of a Willful or Malicious Failure to Guard or Warn Against a Dangerous Condition?
Section 461C.6 removes any “willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity” from the scope of the recreational use immunity. Sallee argues that she raised a genuine issue of material fact as to whether this exception applies, even if the Stewarts would otherwise be entitled to a recreational use immunity. The district court and the court of appeals disagreed, as do the majority and I.
This court has addressed this statutory provision once before. See Bird v. Economy Brick Homes, Inc., 498 N.W.2d 408, 409 (Iowa 1993). In Bird, a motorcyclist struck a steel cable that had been placed across an access road. Id. at 408. “At the time of the accident, there were no markings on the cable to keep it from blending with its surroundings.” Id. After discussing various other eases that had interpreted similar language, we concluded that the mere placement of an unmarked cable across an access road “did not create an issue of material fact as to whether Economy acted willfully or maliciously.” Id. at 410.
The Stewarts had been allowing this kindergarten class to come for the past twenty-five years. During that entire time, the chute had been present in the hayloft. There is no evidence there had ever been an accident in the hayloft. “It’s never been a concern,” Matthew Stewart testified. The Stewarts insisted on being personally present for any visits by any groups. Matthew Stewart explained both the reason why there was a chute in the loft (to allow hay to be thrown down occasionally), and the reason why the chute was covered (to keep the animals warmer).
This case does not fit within the circumstances where a willful or malicious failure to warn or guard has been found. In Mandel v. United States, cited by Sallee, the plaintiff was paralyzed from diving onto a submerged rock. 719 F.2d 963, 964-65 (8th Cir.1983). Although the park rangers did not know of this specific rock, they knew of submerged rocks in the vicinity, knew that people swam there, and had brochures which warned people to be careful about diving; yet they failed to warn the plaintiff or post signs and instead told the plaintiff “that is where everybody goes and that is where we recommend for you to go.” Mandel, 719 F.2d at 967. “It could reasonably be inferred and found that such conduct is the commission of an act with knowledge or appreciation that danger is likely to result therefrom.” Id. *165 at 968; see also 3 Louis A. Lehr, Jr., Premises Liability 3d § 54:41 (2012) (“Wilful conduct as an exception to statutory recreational use tort immunity consists of intentional acts of an unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm will result.”).[16]
Additionally, the phrase “willful or malicious” as used in section 461C.6 ought be interpreted in tandem with the phrase “willful and wanton,” as used in the punitive damage statute. See Iowa Code § 668A.l(l)(a). The latter standard means
“[t]he actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.”
Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist., 788 N.W.2d 386, 396 (Iowa 2010) (quoting McClure v. Walgreen Co., 613 N.W.2d 225, 230 (Iowa 2000)). That threshold has not been met here.
V. Is There a “Tour Guide” Exception?
Finally, Sallee argues that by guiding the group around the farm, including into the hayloft, the Stewarts performed a voluntary undertaking within the meaning of Restatement (Second) of Torts section 323 that is not covered by the recreational use immunity.[17] The district court rejected this argument. In her opening brief on appeal, Sallee renewed her section 323 argument. In her reply brief, she recast this argument into one based on section 7 of the Restatement (Third) of Torts. In that form, the court of appeals accepted it and on that basis reversed the district court’s grant of summary judgment. Regardless of the Restatement box into which this argument falls, I do not believe there is a “tour guide” exception to the recreational use immunity in this case.[18]
In Scott v. Wright, we found that the recreational use immunity did not bar a claim against the defendants based on the negligent driving of a tractor on their property. 486 N.W.2d 40, 42-43 (Iowa 1992). In that case, the plaintiff was seriously injured when she fell off a hay wag *166 on that was being pulled by a tractor owned by the defendants and operated by their son-in-law. Scott, 486 N.W.2d at 41. In affirming a jury verdict in favor of the plaintiff, we reasoned that
Scott’s suit against Wrights rests — not on duties addressed by section 111C.3 [now section 461C.3] — but on vicarious liability for alleged negligence in the operation of a motor vehicle. We are convinced, as was the district court, that this intervening act of negligence takes the case outside the purview of chapter me.
By its terms, section 111C.3 immunizes landowners from only two specific duties of care toward persons using agricultural property for recreational purposes: to keep the premises safe and to warn of dangerous conditions. Nothing in the language of chapter 111C suggests a legislative intent to immunize all negligent acts of landowners, their agents, or employees. Nor do we believe such broad application of the statute would serve the public purpose envisioned by the legislature. Though focused on reducing landowner liability, the statute was also enacted to serve “a growing need for additional recreation areas for use by our citizenry.” Explanation to H.F. 151 at 3, 62nd G.A. (Iowa 1967). The public’s incentive to enter and enjoy private agricultural land would be greatly diminished if users were subject, without recourse, to human error as well as natural hazards.
Because the language of chapter 111C is couched in terms of premises liability, and the legislative history of the statute evinces no other motive for its passage, we are convinced the court correctly refused to apply it in this case.
Id. at 42.
Sallee contends that Scott stands for the proposition that she can sue over any “affirmative act” of negligence by the landowner. She also urges that Scott allows a party to sue when the claim is for “human error” as opposed to “natural hazards.” See id. I do not read Scott so broadly.[19] Scott emphasized that the claim was not for premises liability, and therefore, it was not foreclosed by the statute. Id. Scott’s focus on the statutory language was appropriate. The statute makes clear that except as provided in section 461C.6, a landowner “owes no duty of care to keep the premises safe for entry or use by others for recreational purposes ... or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.” Iowa Code § 461C.3 (emphasis added). This language does not distinguish among duties derived from different sections of the Restatement or distinguish between active and passive negligence. So long as the plaintiffs contention is that the landowner failed to keep the premises safe for entry or use, or failed to warn of a dangerous condition or structure, the action is barred if the other requirements of chapter 461C have been met and if section 461 C.6 does not apply. Scott’s claim went forward because she was asserting negligent driving, not a failure to keep premises safe for entry or use or a failure to warn about a dangerous condition or structure.
Sallee’s claim, however, has to do with the condition of the premises. She alleges either that (1) the hayloft was not safe, (2) Stewart should have warned her about it, or (3) Stewart should not have encouraged the group to go there. See Reply Brief for Appellant at 16 (“This required the Stew- *167 arts to exercise reasonable care, either to take precautions to fix dangers like the hole or not take them into dangerous areas or to warn them of any dangers like the hole”)- The first two of these claims fall squarely within section 461C.3. I believe the third does as well. If a landowner “owes no duty of care to keep the premises safe for entry or use by others for recreational purposes,” see Iowa Code § 461C.3, it follows that the landowner does not breach a duty when he leads a group into an area whose safety he has no duty to maintain. This conclusion is reinforced by section 461C.4, which specifically provides that a holder of land “who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes or urban deer control does not thereby ... [e]xtend any assurance that the premises are safe for any purpose.” Iowa Code § 461C.4(1). The essence of Sallee’s third theory is that by allegedly inviting her into the hayloft, Matthew Stewart implicitly assured her that it was safe for her use.
In Klepper v. City of Milford, the plaintiff tried unsuccessfully to rely on Restatement (Second) of Torts section 323 as an exception to the recreational use immunity. 825 F.2d 1440, 1448-50 (10th Cir.1987).[20] That case involved a serviceman on weekend leave who was paralyzed after diving head first from a moored boat into murky but shallow water. Klepper, 825 F.2d at 1441-42. There was a sign warning against swimming but whether it was actually in place or had been dislodged was subject to dispute. Id. at 1442. Invoking section 323, the plaintiff argued the defendants had assumed a duty when they “undertook to erect a warning sign near the boat dock” and “undertook to make quarterly inspections.” Id. at 1448^49. The United States Court of Appeals for the Tenth Circuit rejected the argument that such an “assumed duty” negated the statutory recreational use immunity, explaining as follows:
We agree with the district court that there is no compulsion under Kansas law to extend sections 323 and 324A of the Restatement to the RUS [statutory recreational use immunity] context. The RUS itself is a statutory modification of the common law of torts and provides for no liability for simple negligence. Instead, it provides for liability only where conduct is willful or malicious or where consideration is given in return for use of the recreational facilities. If the Kansas legislature had wanted to provide for additional exceptions, such as liability for negligent inspections, it could have so stated. To rule otherwise would have the effect of defeating the purpose of the RUS. As the United States points out, “If a negligent, gratuitous inspection results in liability, the requirement in the RUS for the higher standard for liability, i.e., willfulness or maliciousness, has been eliminated.”
Id. at 1450. The Tenth Circuit’s reading of the statute is logical, and the same logic should apply here. Our general assembly, like the Kansas legislature, provided that (subject to certain exceptions) landowners would have no duty “to keep the premises safe for entry or use by others for recreational purposes,” or “to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.” Iowa Code § 461C; Kan. Stat. Ann. § 58-3203 (2005). Whether the duty is “assumed” or “preexisting” does not factor into the analysis so long as the claimed breach of duty is precluded from being raised by the statute.
*168 In Palmer, the United States Court of Appeals for the Ninth Circuit engaged in a similar analysis in overruling an argument based on the undertaking theory articulated in Restatement (Second) of Torts section 323. See 945 F.2d at 1137-38. The plaintiff, who slipped and fell while descending a flight of stairs at a swimming pool, urged that the defendant voluntarily undertook a duty of reasonable care “by hiring lifeguards, washing down the steps, and generally maintaining the pool area.” Id. at 1137. The Ninth Circuit rejected this argument:
Application of the HRUS [Hawaii recreational use immunity statute] precludes other theories of liability based upon mere negligence. Nothing in the language of the statute or its legislative history indicates that Hawaii intended the HRUS to apply only when the landowner fails to take any precautionary measures to ensure the safety of recreational users.
Id.; see also Ervin v. City of Kenosha, 159 Wis.2d 464, 464 N.W.2d 654, 657-660 (1991) (rejecting the plaintiffs’ claim that the negligence of lifeguards took the case outside the recreational use immunity based on a theory of “active negligence” or “gratuitous acts” and noting that if liability were imposed based on such a theory, “these facilities may not be provided”).[21]
VI. Conclusion.
To sum up: Iowa’s recreational use law has always covered agricultural lands and appurtenant buildings, such as a barn. Jumping in hay is a sport in the same sense that other activities listed in section 461C.2(5) are sports, and in the same sense that the term was used in City of Marion. See 643 N.W.2d at 206-08. Jumping in hay is also an activity frequently engaged in outdoors. Although Sallee was not jumping in the hay herself, she was there as a chaperone to serve the overall recreational purpose. Finally, this is a premises liability case where the alleged duty sought to be imposed is foreclosed by sections 461C.3 and 461C.4(1).
Notwithstanding its extensive citations to historical materials, law review articles, and other states’ laws, I think the majority opinion misses the essential point: Our recreational use law protects farmers who want to open up their farm properties so others can play there for free. At least it did so until today.
I respectfully dissent and would affirm the judgment of the district court in its entirety.
WATERMAN, J., joins this dissent.

. Presumably, the legislature decided to broaden the definition of "land” in 2006 when it added "urban deer control” to the protected purposes because controlling the urban deer population would require entry onto properties that did not fit the earlier, narrower definition of "land.” The enrolled bill was entitled, "An act allowing private landowners limited immunity from premises liability during urban deer control hunts.” 2006 Iowa Acts ch. 1121.

. My colleagues assert that a building, to be covered, must be appurtenant to a recreational use in the "true outdoors.” This is the majority’s gloss on the statute. It is not what the legislature enacted. The legislature required that the building be appurtenant to the land, not to the recreational use, let alone to an outdoor recreational use. See Iowa Code § 461C.2(3). As noted by the court of appeals, "The Stewarts’ dairy farm and appurtenant buildings qualify for limited liability by this definition.”

. Because sections 461C.3 and 461C.4 of Iowa’s act are identical to the model act— save for Iowa’s addition of "urban deer control” and substitution of "holder of land” for "owner of land” — I believe that out-of-state cases are more relevant here. Compare Iowa Code §§ 461C.3, .4, with Council of State Governments, 24 Suggested State Legislation at 151.

. The majority contends that construing "other summer and winter sports” as some *163 kind of a catchall is inconsistent with the fact that the legislature later added trapping and all-terrain vehicle riding to the list of covered activities in section 461C.2(5). But the majority's own construction of "other summer and winter sports" as meaning "true outdoor sports” is subject to the same criticism. I think we should acknowledge the reality that groups often go to the legislature seeking a specific statutory immunity even when a more general immunity already protects them. The important point here is that the majority’s construction of "sports" is consistent with neither of the two common definitions of that term.

. Recognizing the fact that the statute does cover buildings, my colleagues concede that "under some circumstances activities within a building might give rise to immunity under the statute." Thus, they would presumably find that horseback riding inside a covered enclosure on a farm would be subject to the recreational use immunity. But why not jumping in a hayloft?

. Here again, we are interpreting provisions (relevant portions of sections 461C.3 and 461C.4) that match the model act, so I believe out-of-state authorities are entitled to more weight than they otherwise would be. Compare Iowa Code §§ 461C.3, .4, with Council of State Governments, 24 Suggested State Legislation at 151.

. Here, Iowa's exception for a "willful or malicious failure to guard or warn” corresponds to that in the model act. Compare Iowa Code § 461C.6, with Council of State Governments, 24 Suggested State Legislation at 151.

. Restatement (Second) of Torts section 323 (1965) provides:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other’s reliance upon the undertaking.

.The majority does not reach this issue. The special concurrence does, stating that Sallee in effect brought a “negligent supervision” claim. This is simply wrong. A negligent supervision claim arises when an employer negligently supervises an employee, whose tortious or wrongful act then harms the plaintiff. See Am. Family Mut. Ins. Co. v. Corrigan, 697 N.W.2d 108, 112 (Iowa 2005) (noting that negligent supervision includes as an element an underlying tort or wrongful act committed by the person who was not properly supervised); Estate of Harris v. Papa John's Pizza, 679 N.W.2d 673, 680 (Iowa 2004) (listing the elements of negligent supervision). Sallee does not allege that the Stewarts negligently supervised an employee whose tortious or wrongful act harmed her. Regardless, the proper focus should be on the language of sections 461C.3 and 46IC.4(1) and whether they bar Sallee's claim, whatever nomenclature is used.

. Obviously, Bird involved a case of alleged human error — stretching a cable across an access road and not warning about it. See 498 N.W.2d at 408.

. Once again, this is an area where Iowa has adopted the model act language. Compare Iowa Code § 461C.3, with Council of State Governments, 24 Suggested State Legislation at 151.

. Sena v. Town of Greenfield is not on point because New York has a special rule for supervised municipal parks. See 91 N.Y.2d 611, 673 N.Y.S.2d 984, 696 N.E.2d 996, 999 (1998).
Sallee also argues that she has a claim against the Stewarts under Restatement (Second) of Torts section 310 (1965) ("Conscious Misrepresentation Involving Risk of Physical Harm”). That section provides:
An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor
(a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
(b) knows
(i) that the statement is false, or
(ii) that he has not the knowledge which he professes.
I agree with the Stewarts that Sallee has not shown an affirmative misrepresentation. Accordingly, I would not reach the question whether chapter 461C would bar such a claim in any event.